NEW ENGLAND CABINET WORKS vs. RICHARD H. MORRIS.

Middlesex.    November 14, 1916. — March 5, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Assignment.    Contract,* Novation.

Discussion by RUGG, C. J., of the rule that executory contracts involving a relation of personal confidence are not assignable before performance without the consent of the other party to the contract.

A contract made by a manufacturer of store furnishings with a retail druggist, who reposed special confidence in his skill and judgment, to design, manufacture and install the fixtures and equipment for the druggist's store, is not assignable by the manufacturer without the consent of the druggist.

Where a manufacturer, who has made a contract to design, manufacture and install the fixtures and equipment for the store of a druggist, who reposed confidence in his skill, after he partly has performed this contract sells out his business, and his successor, to whom the contract has been assigned, completes its performance without notice to the druggist of the assignment and without any knowledge of

it by him, and thereafter the manufacturer absolves the druggist from all obligations to him and the druggist on learning of the assignment agrees to pay the balance of the contract price to the successor and assignee of the manufacturer, this constitutes a novation, and the assignee in his own name can recover the balance of the contract price from the druggist.

An oral assignment of a contract with a third person is valid between the assignor and the assignee, but the assignee cannot maintain an action on the contract in his own name without an assignment in writing which under R. L. c. 173, § 4, gives him that right.

Where a manufacturer of store furnishings sold out his business and gave a bill of sale to his successor transferring to him "all . . . bills receivable, and all appurtenances to the business," and this instrument has been treated by the parties as including a partly performed contract to manufacture and install the fixtures and equipment in a drug store, it can be found to be an assignment in writing of the contract, so that under R. L. c. 173, § 4, the purchaser of the business can maintain an action on the contract in his own name.

CONTRACT to recover a balance alleged to be due for fixtures manufactured for and installed in the drug store of the defendant at the corner of Broadway and Corey Street in Everett. Writ dated January 15, 1914.

The declaration contained three counts. The first count was on an alleged contract between the plaintiff and the defendant, the second count was on an account annexed, and the third count, added by amendment, alleged that the plaintiff was the assignee of one Charles M. Bearce and alleged a contract between Bearce and the defendant to manufacture the fixtures for the defendant's drug store.

In the Superior Court the case was tried before *Bell,* J. The evidence is described in the opinion. At the close of the evidence the defendant, among other requests, asked the judge to give to the jury the following instructions:

"1. The evidence fails to establish the contract alleged in the first count of the declaration to have been made between the parties to this action and on this count the jury must find for the defendant.

"2. The evidence fails to establish the contract alleged in the second count of the declaration to have been made between the parties to this action and on this count the jury must find for the defendant."

"4. The executory contract between Mr. Bearce and the defendant, R. H. Morris, for the building and installation of the fixtures for the equipment of the drug store could not be assigned by

Mr. Bearce to the New England Cabinet Works to become binding upon the defendant, R. H. Morris, without his consent."

"11. An executory contract to build and furnish fixtures to equip a drug store cannot be assigned to a third party by the person contracting to equip the store with such fixtures so as to bind the party ordering same without the consent of that party."

The judge refused to give these and other instructions requested and left the case to the jury with different instructions. The jury returned a verdict for the plaintiff in the sum of $900; and the defendant alleged exceptions.

*J. J. Irwin*, for the defendant.

*J. M. Hoy*, for the plaintiff.

RUGG, C. J.   The material facts are that in December, 1912, the defendant made a contract with one Bearce, in whom he reposed special confidence, to design, manufacture and install the fixtures and equipment for a drug store in a building then in process of erection, Bearce to act in accordance with his own ideas of what would be suitable and proper for that store.   Bearce was at this time carrying on the business of cabinet-making and manufacturing store furnishings, occupying a factory for this purpose.   The design of the store furnishings for the defendant was made in January following by Bearce.   The furnishings and fixtures were manufactured and the installation in the store was made in May, 1913, in a manner and at a price with which the defendant finds no fault.   On February 13, 1913, the plaintiff made an agreement with Bearce to take over his business and real and personal property connected therewith and to employ Bearce as manager of the factory where the fixtures and equipment furnished to the defendant were being built.   On the same day the contract of Bearce with the defendant was "turned over" to the plaintiff by Bearce. On March 8, 1913, Bearce executed and delivered to the plaintiff a bill of sale of "the following goods and chattels, namely, machinery, tools and implements, stock of lumber and stock in trade manufactured and unmanufactured, horses, teams, harnesses and equipments, and all books of account, notes receivable and bills receivable, and all appurtenances to the business of store furnishings and cabinet-making belonging to me situated upon premises at 11 to 17 Parlin Street in said Everett or elsewhere."

There was evidence tending to show that, in June, after the fix-

tures and equipment were fully installed in the store, one Maxcy, the treasurer and general manager of the plaintiff, said to the defendant that Bearce had left or was about to leave the plaintiff's employ and had stated that there was a balance due on the defendant's store, which was a cash transaction, and that the defendant replied that he was sorry he had not been able to pay earlier, that he could not send a check that night, "but would be able to fix it up within a week." This conversation was denied by the defendant, who testified that he was utterly ignorant of any transfer of his business by Bearce to the plaintiff and did not know of the existence of the plaintiff until after the equipment and fixtures had been set up in the store, that he had received no bill from the plaintiff, and that in April and in May he made payments on account by checks to Bearce.

There were three counts in the plaintiff's declaration: The first was on a contract between the plaintiff and the defendant for building and providing fixtures and placing them in the store; the second was on an account annexed for furnishing the same goods; and the third alleged an assignment by Bearce to it of the contract between Bearce and the defendant and performance of the contract by it.

The trial appears to have proceeded upon the theory that the contract was made between Bearce and the defendant, was partially performed by Bearce, and was then assigned by Bearce without the knowledge or consent of the defendant, to the plaintiff, who completed it without notification to the defendant until it was finished.

The defendant by several requests asked for instructions to the effect that this contract was of such a nature that without his consent it could not be assigned to the plaintiff by Bearce.

The defendant's contention, that in this respect *Boston Ice Co.* v. *Potter*, 123 Mass. 28, is decisive, cannot be upheld. That case, as is pointed out in *Stiff* v. *Keith*, 143 Mass. 224, 225, did not involve the question of assignment of a contract made with a predecessor in business, but related to a new contract sought to be raised by implication.

The question whether a contract is assignable is one which illustrates the effect of general custom in the development of the law, or rather in the application of the general principles of the

common law to changing conditions in the affairs of men. At
bottom it is a matter of the intention of the parties. In the days
of primitive business, when contracts were simple in nature and
small in scope the personal element of the contracting parties was
a more important factor than it is in the complicated, extensive
and impersonal transactions of the present time. It was said in
*Arkansas Valley Smelting Co.* v. *Belden Mining Co.* 127 U. S. 379,
at page 387: "At the present day, no doubt, an agreement to pay
money, or to deliver goods, may be assigned by the person to whom
the money is to be paid or the goods are to be delivered, if there is
nothing in the terms of the contract, whether by requiring some-
thing to be afterwards done by him, or by some other stipulation,
which manifests the intention of the parties that it shall not be
assignable. But every one has a right to select and determine with
whom he will contract, and cannot have another person thrust upon
him without his consent. In the familiar phrase of Lord Denman,
'You have a [the] right to the benefit you anticipate [contemplate]
from the character, credit and substance of the party with whom
you contract.' *Humble* v. *Hunter*, 12 Q. B. 310, 317; *Winchester* v.
*Howard*, 97 Mass. 303, 305; *Boston Ice Co.* v. *Potter*, 123 Mass. 28."
In the opinion in *Delaware County Commissioners* v. *Diebold Safe &
Lock Co.* 133 U. S. 473, at page 488 occur these words: "A contract
to pay money may doubtless be assigned by the person to whom the
money is payable, if there is nothing in the terms of the contract
which manifests the intention of the parties to it that it shall not
be assignable. But when rights arising out of contract are coupled
with obligations to be performed by the contractor, and involve
such a relation of personal confidence that it must have been in-
tended that the rights should be exercised and the obligations per-
formed by him alone, the contract, including both his rights and
his obligations, cannot be assigned without the consent of the other
party to the original contract." These statements, both written by
Mr. Justice Gray, who was Chief Justice of this court when *Boston
Ice Co.* v. *Potter*, 123 Mass. 28, was decided, are confirmatory of
the principles of that decision and are here adopted as the law.
The difficulty arises not from the statement of the governing rule
of law, but in its application to different states of fact.

In the case at bar the contract was to design, manufacture and
install the furniture and fixtures for a new store. It was an entire

contract for an entire price.  Manifestly a contract for design involves personal trust and confidence.  It demands artistic knowledge, skill and training.  The choice of the individual is or may be found to be the decisive consideration.  Bearce, however, under his contract with the defendant, was not only to design but also to manufacture the chattels and fixtures designed by him.  It has been held generally that where goods are sold by a manufacturer who is not a general dealer, there is an implied condition (in the absence of a contrary custom of the trade or other controlling circumstance) that the goods shall be of the manufacturer's own make. *Johnson* v. *Raylton, Dixon, & Co.* 7 Q. B. D. 438, 448, 454.  *British Waggon Co.* v. *Lea & Co.* 5 Q. B. D. 149, 152.  *Schlessinger* v. *Forest Products Co.* 49 Vroom, 637.  That rule applies in connection with the agreement by Bearce to design under the circumstances here disclosed.  The manufacture of store fixtures and furniture, not according to stock patterns nor for the general market, but in conformity to special plans and fitted for a particular store, involves something of reliance upon the personal efficiency of the manufacturer when he is also the designer.  A contract respecting such manufacture is not a sale but a contract for labor.  *Goddard* v. *Binney,* 115 Mass. 450, 454.  The installation of specially designed and manufactured goods, in connection with all the other factors, can hardly be regarded as separate and distinct from the rest of the contract.

These facts easily distinguish the instant case from assignments of contracts obviously indifferent on any reasonable ground as to the person who may perform them, such as was a contract to clean streets, discussed in *Devlin* v. *Mayor & Aldermen of New York,* 63 N. Y. 8, to deliver cord wood, as in *Atlantic & North Carolina Railroad* v. *Atlantic & North Carolina Co.* 147 N. C. 368, to sell land, as in *Simmons* v. *Zimmerman,* 144 Cal. 256, to perform a berth contract respecting a ship, as in *Sorrentino* v. *Buerger,* [1915] 1 K. B. 307, 314, or to deliver chalk, as in *Tolhurst* v. *Associated Portland Cement Manufacturers, Ltd.* [1902] 2 K. B. 660; *S. C.* [1903] A. C. 414.  See also *American Lithographic Co.* v. *Ziegler,* 216 Mass. 287, where the work had been completed before the assignment.

It follows that the fourth and eleventh of the defendant's requests for instructions should have been given in substance. *Kemp* v. *Baerselman,* [1906] 2 K. B. 604.  *New York Bank Note*

*Co.* v. *Hamilton Bank Note Engraving & Printing Co.* 180 N. Y. 280, 293. *Demarest* v. *Dunton Lumber Co.* 88 C. C. A. 310, 311. *Swarts* v. *Narragansett Electric Lighting Co.* 26 R. I. 388. *Wooster* v. *Crane & Co.* 3 Buch. 22.    *Knight* v. *Burgess,* 33 L. J. (N. S.) Ch. 727.    *Shultz* v. *Johnson,* 5 B. Mon. 497.

It is doubtful whether novation was raised or considered during the trial. Attention is not expressly called to it in any of the requests for instructions. It is possible, however, that the judge may have had it in mind in his brief instruction to the effect that "There is evidence . . . that Morris did assent to the performance of the contract — ratified, perhaps, would be the better word — because my impression is . . . it was after the contract was completed. If, after the contract was completed, although it was not assented to and the completion by this plaintiff company was not binding upon the defendant, it was perfectly open to Morris to assent to the contract and promise to pay in accordance with the assignment between Bearce and the company." He then proceeded to summarize the evidence on which such a finding might be based. There was ample evidence to show that Bearce had absolved the defendant from all obligations to him and transferred his rights to the plaintiff. There also was testimony tending to show an unqualified promise by the defendant after complete performance of the contract to pay to the plaintiff the balance due on the contract. This, together with his omission then to protest or express surprise when told by the plaintiff's treasurer that Bearce was about to leave the plaintiff's employ, and his accompanying conduct, would furnish adequate basis for an inference that he knew that Bearce at some time after the making of the original contract had sold his business to the plaintiff and entered its employ and in that capacity had completed the performance of the contract, and that the defendant had assented to and ratified this arrangement, and then, with full information as to the relation between Bearce and the plaintiff, acknowledged and accepted the latter as his creditor, had agreed to pay it the contract price, and had released Bearce from all obligation to him under the contract. If such assent and ratification were found, it would amount to a novation or substitution of the plaintiff for Bearce in his relation to the contract with the defendant. So far as concerns the defendant's obligation to pay, it would be the same as if originally made between him and the

plaintiff. *Macomber* v. *Parker*, 14 Pick. 497, 504. *Stowell* v. *Gram*, 184 Mass. 562. *Trudeau* v. *Poutre*, 165 Mass. 81. *Traveler Shoe Co.* v. *Koch*, 216 Mass. 412, 415. As matter of construction, though with some hesitation, we think that the judge may be taken to have referred to novation in the words just quoted from his charge, for the reason among others that on no other ground would he have been justified in refusing to grant the first and second of the defendant's requests for instructions to the effect that the plaintiff could not recover on the first and second counts of its declaration. See *Noyes* v. *Caldwell*, 216 Mass. 525, 527; *Parrot* v. *Mexican Central Railway*, 207 Mass. 184, 190. Thus construed, the refusal to grant these requests, together with the instruction actually given, cannot be said to be erroneous.

There was no evidence that the original contract was made between the plaintiff and the defendant. The contract confessedly was made between Bearce and the defendant. Admittedly, also, performance of the contract was begun by Bearce, who at least had worked upon the design before the transfer of the contract to the plaintiff, and might have been found to have commenced the manufacture of the work designed. The plaintiff's rights spring from its contract with Bearce and its subsequent relations with the defendant. These transactions were subsequent to a partial performance by Bearce of his contract with the defendant. Therefore, the principle of *Orcutt* v. *Nelson*, 1 Gray, 536, 542, and numerous similar cases, to the effect that when a buyer, who has ordered goods of one person, knows before receiving the goods that a different person is filling the order, he is held to assent to and to ratify the transaction as if at first made with the person who fills the order, has no application to these facts.

The assignment by Bearce to the plaintiff of the partially performed contract was dwelt upon at length in the charge. This aspect of the case may be of importance at a new trial as bearing both upon the right of the plaintiff to assert the rights of Bearce, which seems not to have been conceded by the defendant, and upon the rights of the parties in the event that the jury should find that the defendant assented to the assignment after or during performance of the contract. The jury were instructed that the assignment from Bearce to the plaintiff need not be in writing and might rest in parol. That instruction was correct so far as it

bore upon the relations between the plaintiff and Bearce. There may be assignments by parol of non-negotiable rights and contracts. *Jones* v. *Witter*, 13 Mass. 304. *Nelson* v. *Piper*, 213 Mass. 531, 533. But that instruction was erroneous if it was intended to bear upon the rights of the plaintiff against the defendant. Such oral assignments do not authorize the bringing of action in the name of the assignee. The plaintiff was not suing in the name of Bearce for its own benefit, but in its own name for its own benefit, and aside from novation it could not sue at law in its own name on the contract because it was not a party to it, and there was no privity of contract between the plaintiff and the defendant. *Hills* v. *Snell*, 104 Mass. 173. It could not otherwise sue in its own name except by statute. The governing statute is R. L. c. 173, § 4, which permits the assignee of a non-negotiable chose in action to maintain an action in his own name only when it "has been assigned in writing." Manifestly under these circumstances an oral assignment of the contract would not enable the plaintiff to sue in its own name. Therefore, it cannot recover upon the writ and pleadings as they now stand if there was only an oral assignment.

The assignment or bill of sale in writing was important as bearing upon the plaintiff's right to bring an action in its own name. The only words in that written transfer which might be thought to include the contract between Bearce and the defendant were "all . . . bills receivable, and all appurtenances to the business." It was sufficiently favorable to the defendant to leave to the jury the question whether in the light of the construction put by the parties upon the instrument of transfer the contract between Bearce and the defendant was assigned in writing to the plaintiff. *Blais* v. *Clare*, 207 Mass. 67, 70. *Menage* v. *Rosenthal*, 175 Mass. 358, 361. *Winchester* v. *Glazier*, 152 Mass. 316. It would have been open to the jury to find that the parties construed this contract as including the outstanding contracts of Bearce, including that with the defendant. If so, the plaintiff might recover on its third count.

It follows from what has been said that the defendant's requests, with the exception of 4 and 11, were refused rightly either as wrong in law, partial in the statement of the facts assumed, or inapplicable to the case. No error other than those herein stated are disclosed in the record.

*Exceptions sustained.*