HARRY E. ADAMS *vs.* ISAAC COHEN.

Suffolk.    March 9, 1922. — June 27, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, & CARROLL, JJ.

*Frauds, Statute of.    Sales Act.*

In an action of contract to recover damages for refusal by the defendant to accept certain shoes of a value in excess of $500 manufactured for him by the plaintiff, it appeared that the defendant refused to accept any of the shoes, gave nothing in earnest to bind the bargain or in part payment and neither by himself nor by his agent signed any memorandum in writing of the contract. There was evidence warranting a finding that the shoes were manufactured on the special order of the defendant, of a peculiar type different from that readily vendible in the general market both as to size and adornment and at a time when the season for that particular style had ended. *Held*, that a finding was warranted that the contract of sale was of a character that, by the provision of the last clause of G. L. c. 106, § 6 (2), made it enforceable although there was no memorandum in writing.

CONTRACT, with a declaration as amended in two counts, the first count being upon an account annexed to recover $4,686.60 and interest for shoes sold to the defendant, and the second count being for damages caused by the alleged refusal of the defendant to accept the shoes.   Writ dated August 19, 1920.

The answer was a general denial and that the alleged contract or sale was unenforceable by reason of the sales act and the statute of frauds.

In the Superior Court, the action was tried before *Morton*, J. Material evidence is described in the opinion.   At the close of the evidence, the judge at the request of the defendant ruled that upon all the evidence the plaintiff was not entitled to recover, ordered a verdict for the defendant and reported the action to this court for determination, judgment to be ordered upon the verdict if his ruling was right, and if his ruling was wrong, a new trial to be ordered.

*A. T. Smith*, (*W. J. Drew* with him,) for the plaintiff.

*A. A. Silton*, for the defendant.

RUGG, C. J.   This is an action of contract brought to recover damages for refusal by the defendant to accept certain shoes

manufactured for him by the plaintiff. There was evidence tending to show that the plaintiff was a manufacturer of men's shoes, that he sold shoes upon orders first obtained by him but that the most important part of his business was not selling shoes after manufacture, that the defendant ordered of him one hundred dozen of "brog. oxford" shoes, that those ordered were "a fancy shoe" and harder to get "through the works than . . . a plain shoe," that the shoes ordered by the defendant "is a specially made shoe" in respect of its perforations and otherwise "very fancy," that a part of the order was for size five and one half, which was an unusual size and not commonly sold in the trade, that the order was given on April 22 for deliveries to be made in June, which was late to buy and have delivered that style of shoe, that the details of the order were: "'100 dozen. 100 12 pair lots. 12 pairs. 25 5½ to 9. 25 6 to 11. 25 5½ to 10. 25 6 to 10.' The first two numbers are 'E' width, and the last two are 'D' width. 'Tan royal brog. oxford. No. 2 pattern. Wing tip. 97 perforation pk. Ten 4 pt. BB lining. 97 perforation lace. Blind eyelets. Vamping, 2 open. 97 perforation and pink. Fox and vamp. Outside heel stay No. 4. Finish 255. Last 37. Welt, nat. Edge, 11. Innersole, 'G' which means 'grain.' 'Counter, HF. Heel, square, No. 3. Slugging, full steel. 7—7½ E slip. White robbon. 5.35;" that these shoes were not suitable for sale by the plaintiff in the ordinary course of his business, that these sizes and type might be salable to one concern and not salable to others, that the shoes thus ordered were extremely hard to make because of the "perforations," "pinkings or trimmings," and were not salable at that time because the oxford season had gone by. While the force of testimony of this nature was somewhat shaken on cross-examination, still the jury might have believed it to be true. The price of the entire order was more than $500. The defendant refused to receive or accept any of the shoes, gave nothing in earnest to bind the bargain or in part payment, and neither by himself nor his agent signed any note or memorandum in writing of the contract.

The only question presented is whether on the evidence it could have been found that the transaction was within the exception of that part of the statute of frauds contained in St. 1908,

c. 237, § 4, cl. 2 (see now G. L. c. 106, § 6, cl. 2), in these words: "The provisions of this section shall apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time, or may not at the time of such contract or sale be actually made, procured, or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply." This provision of the sales act is simply declaratory of the Massachusetts rule as summarized in the leading case of *Goddard* v. *Binney*, 115 Mass. 450, 454, in these words: "A contract for the sale of articles then existing, or such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract for sale of goods, to which the statute applies. But on the other hand, if the goods are to be manufactured especially for the purchaser, upon his special order, and not for the general market, the case is not within the statute."

There was evidence sufficient to support a finding of facts to take the transaction out of the statute. It might have been found that the shoes in question were manufactured on the special order of the defendant, of a peculiar type different from that readily vendible in the general market both as to sizes and adornment, and at a time when the season for that particular style had ended.

*New trial ordered.*