SIDNEY STEVENS IMPLEMENT CO. v. HINTZE.

No. 5798.   Decided May 7, 1937.   (67 P. [2d] 632.)

*Thatcher & Young,* of Ogden, for appellant.

*Wade M. Johnson* and *John A. Hendricks,* both of Ogden, for respondent.

HANSON, Justice.

Plaintiff sued defendant to recover a balance alleged to be owing on a verbal contract between the parties under which plaintiff constructed an automobile trailer for defen-

dant. The complaint alleges that the agreement provided that plaintiff was to furnish all the necessary materials and labor in the construction of a trailer body 14 feet in length for $550, the defendant to furnish the chassis upon which the trailer body was to be mounted. The plaintiff was to be paid extra for work done upon the chassis and for fixtures and furnishings to be placed inside the body. Later the agreement was modified by increasing the length of the trailer body to 17 feet and the price for the body to $600. The complaint alleges full performance of this contract and a tender of the trailer upon payment of the purchase price and acceptance of the trailer by defendant. The sum of $200 was paid by defendant shortly after the work was commenced. Upon the theory that the contract was one for furnishing materials and performing work and labor, rather than a sale, plaintiff sought to impress a lien upon the trailer under section 52-2-3, R. S. Utah 1933, it still being in its possession, and to foreclose such lien.

The defendant, by way of counterclaim and defense, alleged that he was engaged in transporting, exhibiting, and demonstrating cash registers as the agent of the National Cash Register Company, covering parts of the States of Idaho, Wyoming, Utah, and Nevada; that he informed plaintiff of the nature of his business and that he wanted a trailer made to hitch to a 1933 Ford coupe to be used in his business; that he informed plaintiff the net weight of the trailer must not exceed 1,600 pounds and the trailer must not rock or be off balance; that defendant had been considering purchasing an Aerocar, a trailer of light construction; that plaintiff informed defendant it had had many years' experience as a builder of carriages and trailers and could make a trailer as good as an Aerocar; that it was agreed that plaintiff would construct a trailer for $500 which would be suitable for defendant's purposes and to weigh not to exceed 1,500 pounds; that defendant was to furnish an auto chassis, frame, and two wheels and tires; that plaintiff was to furnish a coupler at a price not to exceed $60;

that defendant paid $200 on the contract price and furnished the chassis and frame, auto wheels and tires, springs, shock absorbers, wiring and linoleum, these materials costing $88.22; that the trailer as constructed weighed 3,620 pounds and was so constructed that it rocked and swayed and lacked balance; that the trailer was totally unfit for the purposes for which defendant ordered it and he refused to accept it. Defendant, by way of counterclaim, sued to recover back the $200 paid and the $88.22 expended for the parts above enumerated.

In its reply, plaintiff alleged that defendant knew or should have known that the completed trailer would weigh more than 1,600 pounds as it was being built; that defendant himself designed the trailer and directed its construction; that by his conduct defendant waived the right to rely on plaintiff's warranty that the trailer would not weigh more than 1,450 pounds net and is estopped to assert any breach of warranty in that respect.

A trial was had to the court without a jury and judgment was entered in defendant's favor denying plaintiff any relief and awarding defendant the sum of $245.25, being the $200 payment and the sum of $45.25 for the chassis, springs, shock absorbers, wiring, and linoleum furnished by defendant. The court found that these items furnished by defendant had become such a part of the trailer that they could not be detached and returned.

Plaintiff assigns eighteen errors, fourteen of which attack various findings of fact as not being supported by the evidence. Plaintiff assigns as error the court's failure to make findings covering its plea of waiver and estoppel. The remaining assignments allege error in concluding against a recovery by plaintiff and entering judgment for defendant.

The evidence showed without dispute that plaintiff had been engaged for a number of years in building truck bodies and trailers to fill special orders. It did not carry trailers in stock and made them only upon order. Early in April, 1933, defendant conferred with plaintiff's manager relative

to the construction of an auto trailer to be used in his business of selling cash registers. He had seen and was interested in a certain model constructed by the Aerocar Company of Detroit and wanted one made of comparable weight. After several conferences it was agreed that defendant should furnish a chassis and frame and plaintiff was to construct the trailer body thereon. The trailer was to be made according to certain dimensions required by defendant to suit his particular business needs, these dimensions being changed somewhat as to length and height after the agreement was made but before any substantial progress had been made in the work of building the trailer body. The defendant furnished the frame and chassis and the other items mentioned in his counterclaim. While the work was in progress the plans were changed to include two extra windows in the front. The workmen who built the trailer had two cuts of an Aerocar which they used as a pattern. There was some dispute in the evidence as to the price agreed upon and as to there being an agreement as to a definite weight of the completed trailer without fixtures. We will consider these disputed matters and other evidence as we consider plaintiff's assigned errors so as to avoid repetition.

It appears from the arguments of the parties, and from their pleadings, that plaintiff considered the transaction as a contract for work, labor, and materials, while defendant considered it a sale. It is obvious that the contract would be governed by different rules of law depending upon whether it is determined to be a work and labor contract or a contract of sale. An examination of the cases discloses that there is much confusion in determining whether a transaction constitutes one or the other contract. Prior to the enactment of the Uniform Sales Act, however, the prevailing rule in the courts of this country was what has become to be known as the Massachusetts rule, first laid down in *Mixer* v. *Howarth*, 21 Pick. 205, 32 Am. Dec. 256, and later followed in *Goddard* v. *Binney*, 115 Mass. 450, 15 Am. Rep. 112. The rule is stated in the latter case as follows:

"A contract for the sale of articles then existing, or such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods, to which the statute [of frauds] applies. But on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order, and not for the general market, the case is not within the statute."

The case of *Bond* v. *Bourk,* 54 Colo. 51, 129 P. 223, 43 L. R. A. (N. S.) 97, Ann. Cas. 1914C, 581, applies this same rule and cites many cases in support thereof.

It becomes unnecessary to further discuss this question so far as this jurisdiction is concerned, as this state has adopted the Uniform Sales Act and has thereby adopted the rules which that act has established. In his work on Sales (2d Ed.) § 55a, Williston says:

"In the Uniform Sales Act it was thought best to follow the Massachusetts rule representing, on the whole, the weight of American authority * * * Those states which have enacted the Sales Act, therefor, if their previous decisions applied a different test from that expressed in the statute, must revise their early rulings." See, also, *Adams* v. *Cohen,* 242 Mass. 17, 136 N. E. 183.

Section 4 of the Uniform Sales Act, being section 81-1-4, R. S. 1933, is the Statute of Frauds with respect to sales of personal property. Subsection (2) thereof defines the test by which a contract is determined to be within or without the statute. It prescribes that "if the goods are to be manufactured by the seller especially for the buyer, and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply." This section definitely determines what contracts are within and what contracts are without the Statute of Frauds. Does it necessarily follow, however, that the distinction thus made by section 4 of the Sales Act (R. S. 81-1-4), enacting the Statute of Frauds, preserves for all purposes of the Sales Act the distinction between a contract of sale and a contract essentially one for work, labor, and

materials as defined by the Massachusetts rule? This inquiry becomes pertinent, for we are not concerned in this case with the question as to whether the contract here involved was such a contract as to be within or without the Statute of Frauds, but whether it was a contract for work, labor, and materials, and being such would not be a contract of sale involving the remedies, rights, and liabilities attaching to a contract of sale under the Sales Act, for admittedly different remedies, rights, and liabilities would attach to the contract if it should be held to be one of sale or one for work, labor, and materials.

In 55 C. J. 44, it is stated that:

"The question whether a contract is one for the sale of goods or is merely a contract for work, labor, and materials most frequently arises in determining whether a given contract is one 'for the sale of goods' within the statute of frauds, and, in that connection, is a question on which there is much conflict in the decisions. The determination of this question, however, may also become important in determining the rights, remedies, and liabilities of the parties under a given contract, independently of any question of the application of the statute of frauds; and, in such cases, the rules for determining the question under the statute generally apply in determining whether in a particular case the contract is one of sale, or is a contract for work, labor, and materials. For example, the distinction has been made that, if the property is not such as the seller usually has on hand for sale and in existence at the time of the sale, but is made specially for the buyer and upon his special order, the contract is one for work and labor, and not of sale. * * *"

This citation does not disclose whether the principles thus stated are applicable in jurisdictions which have adopted the Uniform Sales Act. Such principles, in our opinion, would apply unless the Sales Act by its terms or necessary implication has so enlarged the definition of a contract of sale for all purposes, except in so far as the application of the Statute of Frauds is concerned, as to destroy the distinction otherwise existing between a contract of sale and a contract for work, labor and materials.

Section 81-1-5 (1), R. S. 1933 (section 5, Uniform Sales Act), reads:

"The goods which form the subject of a contract to sell may be either existing goods, owned or possessed by the seller, or goods to be manufactured or acquired by the seller after the making of the contract to sell, in this title called 'future goods.'"

Section 81-6-5 (1) (section 76, Uniform Sales Act), defines "future goods" as "goods to be manufactured or acquired by the seller after the making of the contract of sale."

These two sections were referred to in the case of *Poole Engineering & Mach. Co.* v. *Swindell*, 161 Md. 571, 157 A. 763, 773. The court there makes the following statement:

"But section 4 of the act deals exclusively with the relation of the statute of frauds to the law of sales, and the language of the exception is expressly limited to the section in which it occurs, and does not therefore limit or qualify the language of any other section, although the fact that it was thought necessary does carry the implication that without it the section would have included 'future goods,' whether made especially for the buyer, or whether suitable for sale in the ordinary course of the seller's business. No such qualification is found in sections 5 or 76 of the act, and it must be assumed that those sections were intended to cover sales of goods 'to be manufactured * * * by the seller after the making of the contract of sale,' whether such goods were or were not manufactured especially for the buyer and whether they were or were not suitable for sale to others in the ordinary course of the seller's business."

The court concludes, however, by applying the rule applied in section 4, the section covering the Statute of Frauds, that the contract there involved was a contract to sell the machine ordered by the plaintiff.

While it is true that sections 5 and 76 of the Sales Act, above quoted, do not contain, as to goods to be manufactured, the qualification contained in section 4, exempting contracts where the goods are to be manufactured especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, these sec-

tions nevertheless contain the qualification contained in the language, "after the making of the contract to sell." This presupposes, before those sections become applicable, that a contract to sell has been made. If, as a matter of law, a contract is one for work, labor, and materials, it is not a contract of sale and consequently would not come within the definitions contained in sections 5 and 76. These two sections, therefore, do not contain any new rule expanding the law of sales to include within its purview a transaction which is not a "contract to sell," nor does the act contain any definition of a "contract to sell" which enlarges its scope so as to eliminate the distinction, existing before the creation of the Uniform Sales Act, between a contract of sale and a contract for work, labor, and materials. We fail to see, therefore, how sections 5 and 76 of the Sales Act can apply to a contract involving, not a "contract to sell," but a contract involving the manufacture of something especially for the buyer and not readily saleable to others in the manufacturer's regular course of business, if such a contract cannot be said to be a contract to sell when made, but must be considered a contract for work, labor, and materials.

We cannot escape the conclusion that by using the phrase, "after the making of the contract to sell," in these two sections, the Sales Act thereby limited the application of said sections to contracts, which, when made, would be contracts to sell, as determined by the rule of law already announced and known as the Massachusetts rule, which rule the Sales Act adopted in the provisions of section 4. Under that rule, as stated in *Mixer* v. *Howarth,* supra,

"Where it is an agreement with a workman, to put materials together and construct an article for the employer, whether at an agreed price or not, though in common parlance it may be called a purchase and sale of the article, to be completed in futuro, it is not a sale until an actual or constructive delivery and acceptance; and the remedy for not accepting is on the agreement." See, also, *New England Cabinet Works* v. *Morris,* 226 Mass. 246, 115 N. E. 315.

The case of *M. K. Smith Corporation* v. *Ellis*, 257 Mass. 269, 153 N. E. 548, was an action to recover the price of a cider tank built by plaintiff for defendant. The tank as constructed was not suitable for storing cider and was never accepted by defendant. The court held that the

"agreement was for the building of a specific article in accordance with the terms of the agreement. It was not a sale of the article to be built, and was not within the terms of the Sales Act which is declaratory of the Massachusetts rule as stated in the leading case of *Goddard* v. *Binney*, 115 Mass. 450, 454, 15 Am. Rep. 112. The contract to build the tank was a contract for labor and materials. * * * It was not within the statute of frauds."

It will thus be seen that the Massachusetts court applied the same rule in determining whether the contract was governed by the Sales Act generally as would have been applied to determine whether it was within the Statute of Frauds part of the act. We believe that this was the intent of the Sales Act and that to hold otherwise would only tend to confusion. See, also, *Racklin-Fagin Construction Corporation* v. *Villar*, 156 Misc. 220, 281 N. Y. S. 426, 427.

We think that under the evidence the contract between plaintiff and defendant, relative to the construction of the trailer, was one for work, labor, and materials and not one of sale. The trailer was built specially for defendant to be used in his particular business and was designed ■ to meet his ideas of what he needed. Plaintiff did not carry such trailers in stock and it does not appear that the trailer, as agreed to be made, was salable in the usual course of plaintiff's business. Defendant furnished the frame and chassis on which the trailer body was built by plaintiff. The trailer would not have been made nor would it have been built in the form it was except for defendant's order. We must look to the agreement, therefore, to determine the rights, remedies, and liabilities of the parties.

Without referring particularly to each of plaintiff's assignments of error, in which it claims the evidence was

insufficient to sustain the court's findings, we shall state what we think the evidence tended to establish and thus dispose of these assignments. The plaintiff had had long experience in the building of automobile bodies and trailers. It is a fair inference that from such experiences plaintiff would know at least approximately the weight of a trailer it undertook to build. Since a trailer has no motor power of its own, but must be drawn to be of any utility, the matter of its weight, and consequently the power necessary to draw it, is a most vital element, and certainly any one building a trailer must consider and know what its weight is likely to be before attempting to build it. Defendant told plaintiff's manager that he wanted the trailer to haul cash registers and to use it as a show room. His territory covered parts of Utah, Nevada, and Wyoming, so that to use the trailer he would necessarily have to pull it up and down highways in mountainous country. At some time during the course of construction of the trailer, if not before construction commenced, defendant purchased a 1933 model Ford V8, and this must have been known to plaintiff because plaintiff had to make the coupling with which to fasten the trailer to defendant's car. When the trailer was about three-fourths finished, defendant tried it out with his car. In the negotiations, defendant informed plaintiff what he wanted and that he was interested in an Aerocar, a trailer he had seen in California. Cuts of a particular model Aerocar with weights and specifications were shown plaintiff's manager and these cuts were used as a pattern in the construction of the trailer by plaintiff. There is substantial evidence that plaintiff's manager assured defendant his company could build a trailer suitable in weight, strength, and durability for less money than the Aerocar in which defendant was interested. The record shows that defendant stated he wanted a trailer which would not weigh more than 1,600 pounds; that he would carry a load of from 1,200 to 1,800 pounds. There is also substantial evidence to show that the trailer,

including frame and body, was not to exceed 1,600 pounds in weight. As a result of these negotiations covering a period of two weeks or more plaintiff undertook to build the trailer, the defendant to furnish the chassis and frame, plaintiff's manager having convinced defendant that plaintiff could build a trailer of the desired weight and utility. Is is certain that defendant relied upon these assurances and assumed that plaintiff could build the trailer as desired. It is true that defendant was to furnish the frame, and this was not furnished until after the work on the trailer was begun, but after it was furnished plaintiff's manager continued to assure defendant the trailer would not weigh in excess of 1,600 pounds. The frame procured by defendant was a hundred pounds or so heavier than the one which plaintiff had on hand and which it contemplated using. Plaintiff had agreed to build the trailer to weigh not to exceed 1,600 pounds. When the frame was furnished, plaintiff must have been satisfied he could use such frame and still keep within the weight limit agreed upon.

It was stipulated that the trailer weighed 3,100 pounds. This increase in weight cannot be excused because of the weight of the frame or because of the minor changes that were made after the work began. The length of the trailer was finally agreed upon after the work was started but before any substantial amount of work was done. The defendant testified he and plaintiff's manager talked about the weight when plaintiff was about to put automobile metal on the outside of the trailer and the manager then assured defendant the trailer would not exceed the agreed weight.

It is argued that defendant supervised the construction of the trailer and was present for that purpose several days a week. So far as we are able to discover from the evidence, defendant always relied upon the skill and experience of plaintiff's workmen and, while present and exhibiting interest in the progress of the work and suggesting changes, he did not assume to direct the work or

impose his judgment as to structural requirements. Certainly, the fact that the trailer, when completed, weighed approximately double the agreed weight cannot be ascribed to anything the defendant did or suggested in the construction of it. Nor do we see how his being present and seeing the work progress can have the effect of a waiver on his part of the weight agreed upon. He was always assured the trailer would not exceed that weight. There is nothing in the evidence to indicate that he should have known by looking at the trailer as it was being built that it would weigh, when completed, more than 1,600 pounds.

Much is said in briefs about plaintiff warranting that the trailer would not weigh in excess of 1,600 pounds. Plaintiff argues that the statements concerning the weight as testified to by defendant were statements of opinions and not the expression of a warranty. In our opinion, ■ this weight element was a part of the contract itself and formed a basic part thereof. The agreement to build a trailer that would not exceed 1,600 pounds in weight was more than a warranty. It was more than an inducement to defendant to make the contract. It was an express stipulation of the contract, one of its specifications, just as much as the agreed length of the trailer or the price to be paid. Being a part of the contract, defendant was not required to allege that he relied thereon to be entitled to assert a breach of the contract.

There appears to be no evidence that the trailer would not be suitable or fit for defendant's business if it weighed in excess of 2,000 pounds, as found by the court, but there was sufficient evidence to sustain the court's finding that the trailer, as constructed, was too heavy to be used ■ by defendant as contemplated. It had no brakes and was to be propelled and stopped by a light car. Defendant testified that without a load the trailer was too heavy to be used on roads going over or down a hill. There could be no

prejudice to plaintiff, therefore, in the findings of the court above referred to.

As to the finding that the parts furnished by defendant, heretofore enumerated, except the wheels and tires, had been built into and had become a part of the trailer so they could not be returned, the record shows that the court viewed and examined the trailer; that a Fordson ■ frame had been welded to the frame furnished by defendant and the frame had been extended by plaintiff by angle iron extensions. It would appear that to return the items mentioned would demolish the trailer, more or less. We do not feel inclined, therefore, to disturb this finding of the court.

Plaintiff attacks the right of defendant to rescind the contract simply for breach thereof. On the question of rescission of a contract for breach thereof, the case of *Callanan* v. *Keeseville, A. C. & L. C. R. Co.*, 199 N. Y. 268, 92 N. E. 747, 752, states the rule as follows:

"There is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case. It is permitted for a failure of consideration, fraud in making the contract, for inability to perform it after it is made, for repudiation of the contract or an essential part thereof, and for such a breach as substantially defeats its purpose. It is not permitted for a slight, casual, or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract. Failure to perform in every respect is not essential, but a failure which leaves the subject of the contract substantially different from what was contracted for is sufficient. If the party who seeks rescission has an adequate remedy at law, ordinarily he is not entitled to rescind, but in case of repudiation, or of a breach going to the root of the contract, unless the damages can be ascertained with reasonable certainty, rescission is a matter of right, with restitution instead of compensation."

In 13 C. J. p. 614, it is said that

"the breach of a dependent covenant, a covenant which goes to the whole consideration of a contract, gives the injured party the right

to rescind a contract, or to treat it as broken and to recover damages for a total breach."

Williston on Contracts, vol. 3, § 1467, p. 2614, says:

"In truth rescission is imposed in invitum by the law at the option of the injured party, and it should be, and in general is, allowed not only for repudiation or total inability, but also for any breach of contract of so material and substantial a nature as could constitute a defense to an action brought by the party in default for a refusal to proceed with the contract." See, also, Black on Rescission of Contracts, §§ 198, 199; *Tighe* v. *Empire Bond & Mortgage Corporation,* 144 Misc. 146, 258 N. Y. S. 278.

In the case of *M. K. Smith Corporation* v. *Ellis,* supra, it was held that the defendant was not liable for the price of the cider tank as the tank was not made as agreed. The court said:

"It was of no value to the defendant if it leaked and was unsuitable for the purpose for which it was intended. The contract implied that it should not leak. * * * Plaintiff never completed its contract and the defendant is not liable for the labor and materials furnished."

In our opinion the excessive weight of the trailer went to the substance of the contract. The trailer was not suitable for defendant's purposes and was of no value to him. It was not what he had contracted for. Rescission, therefore, under the authorities above cited, was proper. Upon a rescission of the contract defendant was entitled to recover the payment made by him on the contract and the value of the parts furnished by him and which became a part of the trailer. Where necessary to effect complete justice, equity will award to the party not in default his expenses necessarily incident to the contract. Black on Rescission of Contracts, § 695; *Stearns-Rogers Mfg. Co.* v. *Jackson Lake Reservoir & Irrigation Co.,* 61 Colo. 403, 158 P. 137; 6 Page on Contracts, § 3421, p. 5970.

The findings of the court reflect the substance of the evidence outlined by us, and, in our opinion, are sufficiently

279

supported by the evidence and are sufficient to support the judgment of the court. The plaintiff's assignments of error relating to the sufficiency of the evidence, therefore, are overruled. We are also of the opinion that the findings of the trial court reflecting the evidence above referred to necessarily negative the allegations of plaintiff's reply that defendant waived the stipulation as to weight and is estopped to rely thereon. In such case "the failure of the court to expressly and specifically find on" such matters is not error. *Skliris* v. *Melis*, 51 Utah 391, 170 P. 968.

There being no error in the record before us, the judgment of the trial court is hereby affirmed. Defendant to recover his costs.

FOLLAND, C. J., and MOFFAT, WOLFE, and LARSON, JJ., concur.