**Elie P. AGHNIDES, Plaintiff**

v.

**The MARMON GROUP, INC., a corporation, Defendant.**

**Civ. A No. 3438 CH.**

United States District Court,
S. D. West Virginia,
Charleston Division.

June 17, 1971.

On Motion to Amend Findings
and Judgment.

July 15, 1972.

---

Edward W. Eardley, Charleston, W. Va., for plaintiff.

Stanley Higgins, Jr., Fayetteville, W. Va., for defendant.

## JUDGMENT AND ORDER

KNAPP, District Judge.

Plaintiff, a resident of the state of New York, is an inventor who has been granted certain patents relating to vehi-

cles equipped with hemispheroidal wheels.

Defendant, the Marmon Group, Inc., is a corporation organized and existing under the laws of the state of Delaware, with its principal office in Oak Hill, West Virginia, and is qualified to do business in the state of West Virginia.

Plaintiff, Elie Aghnides, filed this action against the defendant, the Marmon Group, Inc., on May 13, 1966, alleging breach of an implied contract for the manufacture of a working prototype of a two-wheeled vehicle, hereinafter described, seeking recission of the contract and consequent damages, or in the alternative, for damages for breach of the contract.

Defendant, the Marmon Group, Inc., filed an answer and counterclaim to the action on July 5, 1966, denying a breach of the contract, and, by way of counterclaim alleged that plaintiff was indebted to it in the sum of $27,615.57 due on the contract in question, and the sum of $3,869.76 due on other services furnished to plaintiff. The latter sum is not in dispute, and arises on contracts unrelated to the one in litigation.

Subsequent thereto, the plaintiff filed a reply to defendant's counterclaim on July 19, 1966, and on February 15, 1967, plaintiff filed an amended complaint reiterating in more detail the substance of the initial complaint, again seeking recission and/or damages for breach of contract, to which defendant filed an answer and counterclaim, likewise of similar purport to that hereinbefore set forth. Plaintiff then answered denying the allegations of defendant's counterclaim.

This case was tried to the Court, beginning on March 15, 1971, and the Court, having been fully advised in the premises, makes and files the findings of facts and conclusions of law hereinafter set out.

## FINDINGS OF FACT

1. Defendant, a manufacturer of conventional automotive vehicles, maintains a special projects division in which it designs and constructs unconventional vehicles for a variety of off-the-road purposes. In 1955–56, plaintiff conceived a two-wheel vehicle employing the hemispheroidal principle. Upon plaintiff's request, defendant prepared drawings and descriptions which could be used in making application for a patent for the two-wheel vehicle. Plaintiff's application was filed with the United States Patent Office on June 26, 1956 and a patent was issued on January 10, 1961. This patent, No. 2,967,581, refers to a "tandem wheel vehicle having tilted axles". The objects of this patent, as stated therein include:

(a) To provide a "stable vehicle with only two wheels."

(b) To provide a vehicle "suitable for duty of any kind, including the roughest terrain with mud conditions by using wheels of large diameter and width, maintaining high flotation properties with a low weight factor."

(c) To provide a vehicle "which rolls along in a single track."

(d) To provide a vehicle that "may operate in sand and/or mud."

(e) To provide a vehicle "with wheels of considerable width, hollow on the inside and shaped to wrap around the vehicle body and to decrease its overall width."

(f) To provide a vehicle "with the underside shielded by the wheels to permit the lowering of the underside of the vehicle body and of the center of gravity."

2. Subsequent to the issuance of the patent, the evidence discloses that the parties entered into two separate contracts relating to the development of the objects of said patent. The initial contract, entered into in 1961, provided that defendant would experiment with and determine the feasibility of building a vehicle incorporating the concept of the tandem wheel hereinbefore described, for which plaintiff was to pay the sum of $50,000. Shortly thereafter, the de-

fendant, having allegedly determined the feasibility of the concept, agreed to construct a working prototype of the vehicle and the plaintiff agreed to pay all reasonable expenses incurred in connection therewith. The implied obligation of the defendant was to proceed with the work in accordance with standard accepted practices and procedures in performing such services and to use reasonable engineering skill and judgment in the construction of the working prototype.

3. Defendant made repeated representations to plaintiff on numerous occasions regarding the successful completion of the prototype vehicle called "Cyclops". In a letter dated September 21, 1963, defendant told plaintiff "We will certainly be able to report its completion by the time you get back," "it" referring to "Cyclops" and "by the time you get back" referring to a trip abroad by Mr. Aghnides. The following year, in a letter to plaintiff, dated August 1964, the defendant stated, "The machine handles well and is as close to driving a standard vehicle as it is possible to get".

4. In spite of the aforementioned representations, and others of similar purport, the vehicle was not ready for presentation to plaintiff until November, 1965, when it was tested in plaintiff's presence. This was 5 years after the agreement was consummated. Witnesses for both parties agree that the vehicle, as constructed, was a failure and totally unfit for demonstration to prospective manufacturers. It was unstable, underpowered, and unsafe in design and construction. The defendant failed to develop a scale model as is standard in the industry, and to use sound engineering and construction practices in the work done, and further failed to exercise the skill and judgment reasonably to be expected in the construction of the Cyclops. Specifically it is to be noted that no specifications were prepared and no advance testing with small scale models was ever conducted.

5. The defendant's engineer in charge of the project of building this vehicle testified that the two wheeled vehicular concept developed by plaintiff was not a viable or advantageous engineering concept. In addition, the project engineer stated that the Cyclops was never stable and that it was his belief that the concept would not work with anything except four wheels. He further testified that this was proven in Detroit in testing which took place from May to August 1963. Although the engineer admittedly made this determination in 1963, under the evidence, he should have done so as early as 1961. In spite of such firm conclusions, defendant's engineer never informed the plaintiff and continued to make representations regarding the successful completion of the vehicle based upon the two wheeled concept. It was not until middle or late 1965 that the engineer made any suggestion regarding the use of a separate wheel at the apex of the hemispheroidal wheel, providing a dual tire hemispheroidal shape.

■ 6. The Court specifically finds that the defendant breached its contract with the plaintiff in that (1) it failed to do the required and necessary engineering planning and research standard to the industry to determine the feasibility or workability of the machine conceived by plaintiff and to fully inform plaintiff with respect to such feasibility, (2) it used substandard techniques and skill in the construction of the vehicle, and particularly was this so in its omission to construct a "working scale model" of the vehicle, (3) the construction actually done was unacceptable as a reasonably satisfactory engineering accomplishment, and the charges made to plaintiff for construction thereof were not properly authenticated, (4) that plaintiff was continuously misled as to the progress of the work and (5) that the plaintiff received no benefit from the contract.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter and has

venue of this action pursuant to 28 U.S.C. § 1332 and § 1391, respectively.

2. In accordance with the stipulation of the parties, the law of Indiana is applicable to the facts of this case. Although the state of Indiana adopted the Uniform Commercial Code in 1964, by its own terms it is not applicable to transactions antedating its adoption. Under the law of the state of Indiana where the object of a contract is the manufacture of something to be made especially for the buyer, upon his special order, and the object is not suitable for sale to others in the ordinary course of business, as in the instant case, the contract is not a sale within the meaning of the Uniform Sales Act. Gross Income Tax Division of State v. W. B. Conkey Co., 228 Ind.App. 352, 90 N.E.2d 805 (1950); Sidney Stevens Implement Co. v. Hintze, 92 Utah 264, 67 P.2d 632 (1937). Here the agreement between the parties is a contract for work, labor and materials and local contract law is applicable.

Plaintiff and defendant entered into an agreement in 1961 under which defendant was to determine the feasibility of the concept of a two-wheel hemispheroidal vehicle, and plaintiff was to pay defendant $50,000 for the performance of such services. The agreement was consummated and defendant is entitled to the agreed price of $50,000.

4. Rescission is an appropriate remedy where there is a substantial and material failure to produce that which was contracted for or where there exists a defect requiring substantial reconstruction. James I. Barnes Const. Co. v. Washington Township, 134 Ind.App. 461, 184 N.E.2d 763 (Ind.App.1962); Sidney Stevens Implement Co. v. Hintze, supra.

5. The sum of $50,000 in payments by plaintiff to defendant is credited to the performance of the initial contract by the parties.

6. The filing of the complaint for recovery of the contract price constitutes a "demand for payment" within the meaning of the Indiana statute, Scotco, Inc. v. Dormeyer Industries, 402 F.2d 336 (7 Cir. 1968), which provides as follows:

"On writings and accounts.—On money due on any instrument in writing, on an account stated, from the date of settlement, or an account closed, upon the day an itemized bill shall have been rendered and payment demanded, or on money had and received for the use of another and retained without his consent, interest shall be allowed at the rate of six dollars [$6.00] a year on one hundred dollars [$100]." Burns' Ind.Stat.Ann. § 19–12–103, IC 1971, 24–5–1–3.

7. The amount of $3,869.76, being the balance due on material and labor furnished by the defendant to plaintiff in unrelated contracts is not in controversy, and defendant is entitled to be paid said sum with interest thereon.

8. The defendant having substantially failed to perform the obligations under the agreement with plaintiff for the manufacture of Cyclops, the plaintiff, having received no benefit therefrom, is entitled to rescission, Sidney Stevens Implement Co. v. Hintze, supra, and the recovery of all sums paid on account of same less the credits herein set out.

9. That portion of the counterclaim of defendant applicable to the contract in question in this case, or the sum of $27,615.27, is denied since the Court has hereinbefore held that the plaintiff is entitled to rescission thereof.

10. The Court therefore concludes that the plaintiff, Elie P. Aghnides is entitled to judgment against the defendant, The Marmon Group, Inc., for the sums paid on account of said contract, or $124,375.16, less the amount of $3,869.76, the agreed balance due to defendant on unrelated work, with interest at the rate of six percent per annum, from May 13, 1966, the date of the filing of the complaint, until paid.

It is accordingly adjudged and ordered that the plaintiff do recover of and from the defendant herein the sum of $120,505.40, with interest thereon from

May 13, 1966, until paid, each party to pay its own costs.

## ON MOTION TO AMEND FINDINGS AND JUDGMENT

Plaintiff, Elie P. Aghnides, filed the above styled civil action against the defendant, The Marmon Group, Inc., on May 13, 1966, alleging breach of an implied contract for the manufacture of a working prototype of a two wheeled vehicle and seeking rescission of the contract and consequential damages, or in the alternative, damages for breach of contract. The case was tried to the Court beginning on March 15, 1971. On June 17, 1971, the Court entered a judgment rescinding the contract and awarding judgment to the plaintiff in the amount of $120,505.40, together with interest thereon from May 13, 1966, the date the suit was filed.

Subsequent thereto on June 25, 1971, the defendant The Marmon Group, Inc., filed a motion to (1) amend the court's Conclusion of Law #10 to provide that the plaintiff should have interest on the judgment from the date of entry thereof, to-wit: June 16, 1971, rather than May 13, 1966, the date of the filing of the complaint herein, and to amend the judgment accordingly and (2) if the court should find that the plaintiff is entitled to interest upon the sum of $120,505.40 for any period of time prior to June 16, 1971, the same should not in any event be from the date of the institution of the action.

In support of its motion, the defendant alleges that the delay in bringing this action on for trial was for a substantial period of time chargeable to the failure of plaintiff to appear and prosecute his action. In support of the defendant's motion, the defendant filed a Chronology of Litigation which itemizes the transactions between the plaintiff and the defendant from the date of institution of the suit. Subsequent thereto, on July 6, 1971, plaintiff filed a response to defendant's motion to amend the findings and judgment of the court. On Wednesday, July 7, 1971, the court heard oral arguments on the motion and at that time plaintiff submitted a written memorandum in opposition to defendant's motion to amend the findings and judgment of the court.

In examining the record, the court finds that from May 16, 1966, the date of the filing of this action, until November, 1970, all continuances in the proceeding were the result of either the Court's unilateral action resulting from its own scheduling conflicts or the mutual consent of both parties. Up until that date, there is nothing in the record to indicate that those continuances which were prompted by plaintiff were without defendant's consent or ratification. Moreover, counsel for defendant up until the fall of 1969 was still attempting to get depositions of witnesses. On May 2, 1969, counsel for defendant wrote a letter indicating he had finally found Mr. Becker, an expert witness. On July 7, 1969, he wrote plaintiff suggesting the taking of the Becker deposition in California, and a letter dated October 20, 1969, indicates that Mr. Becker had finally been obtained as an expert witness and defendant was ready to proceed. Although the defendant did make several suggestions to plaintiff in 1970 that this case be set for trial, there is no indication that he had actually pressed the point to any extent.

Plaintiff and defendant did agree upon a trial date of November 30, 1970. However, due to the illness of the plaintiff, Mr. Aghnides, the case was continued, and the parties agreed upon a trial date of February 15, 1971, which was later changed to February 16, 1971. On February 2, 1971, counsel for plaintiff again requested a continuance for the reason that plaintiff was a party to a legal proceeding in a court in Germany which required his being out of the country. The court granted plaintiff's request and continued the date of trial until March 15, 1971. Although the court notes that the order dated February 2, 1971, granting a continuance of the trial of the action from February 16, 1971, to March 15, 1971, indicates that

the plaintiff had failed to prosecute this action with reasonable diligence and that continuances had heretofore been granted for the convenience of the plaintiff, the court finds that the continuances of November and February dates for trial which were granted at the instance of the plaintiff were for good cause shown and the record does not indicate more than a cursory objection on the part of the defendant to the delay in the trial of the case.

Notwithstanding the foregoing facts, it is to be recalled that the parties stipulated that the law of Indiana was to be applied to the facts of this case. The applicable statute of the State of Indiana provides as follows:

"On writings and accounts.—On money due on any instrument in writing, on an account stated, from the date of settlement, or an account closed, upon the day an itemized bill shall have been rendered and payment demanded, or on money had and received for the use of another and retained without his consent, interest shall be allowed at the rate of six dollars [$6.00] a year on one hundred dollars [$100]." Burns' Indiana Statutes Ann. Sec. 19–12–103.

■■ In determining the question of interest initially, the court was persuaded by the clear provisions of said statute. It is to be noted that the courts of Indiana hold that the filing of a complaint for recovery of the contract price constitutes a "demand for payment" within the meaning of the Indiana statute. Scotco, Inc. v. Dormeyer Industries, 402 F.2d 336 (7 Cir. 1968). The language of the aforesaid statute does not indicate that granting of interest is within the discretion of the court. On the contrary, it plainly states that "interest shall be allowed." In Harrold v. Markin, 252 N.E.2d 159 (Ind.App. 1969), an action for money had and received, the court held that since there was express statutory authority for the mandatory allowance of interest, there was no error in the trial court's instruction to that effect.

■ The court has concluded, therefore, that to allow interest in this action was proper, and hereby denies defendant's motion to amend the findings and judgment. Counsel may prepare an appropriate order, incorporating this memorandum opinion by reference therein.