## YOE ET AL. *v.* NEWCOMB.

[No. 4,848. Filed June 8, 1904. Rehearing denied October 5, 1904.]

CONTRACTS.—*Not Alleged to be in Writing.—Pleading.*—A contract sued on not alleged to have been in writing must be regarded as oral. *p. 616.*

FRAUDS, STATUTE OF.—*Sales.— Goods to be Manufactured.*—A contract whereby a manufacturer of shoes agrees to furnish the material and make and deliver to a retail dealer a certain line of shoes, adapted to sale in the markets for such goods, is one for the sale of goods within the statute of frauds (§6635 Burns 1901). *pp. 617–619.*

From Madison Circuit Court; *John F. McClure,* Judge.

Action by Scott K. Newcomb against William J. Yoe and another. From a judgment for plaintiff, defendants appeal. *Reversed.*

*H. F. Wilkie,* for appellants.

*W. A. Kittinger* and *W. S. Diven,* for appellee.

BLACK, C. J.—A demurrer to the appellee's complaint for want of sufficient facts was overruled. It was alleged in the complaint that the defendants, the appellants, were retail shoe dealers in the city of Elwood, Madison county, Indiana, and the appellee was a manufacturer of shoes in the city of Rochester, New York; that April 26, 1901, the appellants ordered of the appellee a certain line of shoes, to be manufactured by the appellee for the appellants in his factory at Rochester, and to be shipped August 1, 1901, and dated September 1, 1901, for which the appellants "agreed to pay the price thereon agreed for the said shoes;" that in accordance with the order the appellee proceeded to manufacture, and did manufacture, all the shoes so

ordered manufactured by the appellants, and manufactured
them "in accordance with the orders and agreement be-
tween the parties that they would do and pack them prop-
erly for shipment, and put them in cases ready to be
shipped, and so notified the plaintiff that they had so man-
ufactured them and had them ready to be shipped at the
time as agreed upon; that, in accordance with an after re-
quest of the said defendants, the plaintiff held the said
goods, which were then packed for the said defendants and
in the wareroom of plaintiff, and held the goods of the
said defendants until October 15, or thereabouts, when the
same were shipped to the said defendants in the city of
Elwood, Indiana; that said shoes so shipped and ordered,
and the sizes and prices as agreed upon, and the amount
due plaintiff from the defendants for said manufacturing,
shipment, and delivery of said goods is $499.20; that
the plaintiff thereby fully delivered, in accordance with his
said contract, the said goods to be manufactured under
said order of the said defendants." A bill of particulars
was made an exhibit. It was further alleged that the goods
were "so manufactured, set apart, and packed for the said
defendants, and delivered to the said defendants as afore-
said, at their special instance and request;" that there
was due the appellee from the appellants therefor the sum
of $499.20, and the same was wholly unpaid; that the
appellee had demanded payment therefor, and the appel-
lants had refused to pay, etc.

The contract, not being alleged to have been in writing,
must be regarded as oral. It is contended on behalf of
the appellants that it is within the seventh section of our
statute of frauds and perjuries (§6635 Burns 1901),
which provides: "No contract for the sale of any goods,
for the price of $50 dollars or more, shall be valid, unless
the purchaser shall receive part of such property, or shall
give something in earnest to bind the bargain or in part
payment, or unless some note or memorandum in writing

Yoe *v.* Newcomb.

of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized." It was the manifest purpose of the pleader to treat the contract as one for the performance of labor and the furnishing of materials by the appellee, and not a contract for the sale of goods within the meaning of the statute. There is general agreement that the statute includes executory contracts for the sale of goods, and it is also agreed in general that it applies to contracts for the sale of goods to one person by another, to be manufactured in the future by any third person whom the latter may select.

In cases of contracts contemplating the manufacture of goods for one of the contracting parties by the other, or by a particular, designated manufacturer, from materials to be provided by the manufacturer, the consideration being the price or value of the finished goods to be delivered, there has been much diversity of decision both in England and America, as may readily be seen in the various treatises of text-writers on the subjects of sales and the statute of frauds, many of the cases being based on inconclusive reasons, and indicating a desire to escape from the comprehensive meaning of the statute, or resting upon precedents which manifest such a desire. If the controlling purpose of the contract be the employment of the labor of one of the parties for the accomplishment of a special result, rather than merely to procure the delivery of goods of a designated kind for the price or value, it would seem that the statute would not be applicable.

We will not seek to formulate a rule or doctrine on the subject, except so far as necessary to ascertain the limitations applicable to the facts alleged in this complaint. If the contract be one whereby one of the parties is to deliver to the other, for a price or value, certain goods to be manufactured by the former from materials to be provided or furnished by him, and he be a person whose business is

the supplying in like manner of goods of the same kind to his customers in general, or to any acceptable dealer in such goods, and they are to be so manufactured from designs or models made or provided by him for use in his business generally, from which the other party selects or designates the kind of articles he wishes, not himself providing or designating designs, models, or decorations, or distinguishing peculiarities otherwise not in use by the manufacturer in his business, and the goods be such that upon refusal to accept them they will still be goods adapted to sale in the markets for such goods, and therefore may be disposed of to other customers of the manufacturer, being of a kind suitable and acceptable in the trade in such goods, the manifest purpose of the transaction not having reference chiefly to the skill and labor of the particular manufacturer, but relating rather to the procurement, though upon special order, by the other party, of goods of a certain description habitually furnished to the trade by the manufacturer, whether ordinarily from a general stock usually kept on hand by the manufacturer, or manufactured only when so ordered, it seems that the transaction should be regarded as a contract for the sale of goods, rather than the employment of labor upon materials incidentally furnished by the employe, or what is sometimes designated as a contract for labor and materials. The reported decisions of various courts show that slight distinctions have sometimes turned the scale.

Looking to the direct averments of the complaint, it appears therefrom that the goods were manufactured by the plaintiff in the course of his general business, in accordance with an order for such goods from the defendants, who were retail dealers in such goods; and there is nothing in the pleading from which to infer that they were not manufactured by the plaintiff in all respects from his own designs or models, already in use by him in the manufacture of the same kind of goods for his customers in general, or

Yoe v. Newcomb.

that these goods were not manufactured under this order therefor, simply for the reason that he had not or would not have a sufficient quantity of the same kind of goods in a stock usually made and kept by him for sale to the trade generally. It does not appear that he only manufactured upon special orders. It is averred that the prices were agreed upon, and it is somewhat indirectly indicated that the sizes were agreed upon; but it does not appear but that the materials, sizes, shapes, quality, and prices were each and all determined by the plaintiff in the usual course of his business as a manufacturer and seller of shoes, instead of being specially proposed or required by the defendants. The goods were not such that upon the refusal of the defendants to accept them they would be comparatively worthless in the hands of the plaintiff, as in the case of a set of artificial teeth made for a particular person, or the case of a portrait of a private individual, painted upon special order for himself or a member of his family. On the contrary, the goods here in question would be salable in the market for their market value as shoes, the only value within the agreement or the contemplation of the parties to the transaction. The order, so far as shown, does not appear to have been other than one for the manufacture and delivery, for the usual price agreed to by the defendants, of articles of merchandise habitually manufactured in the ordinary course of the plaintiff's business; and the method pursued does not appear to be other than one adopted by the plaintiff for the sale of his goods in the market. It seems to us to be too wide a departure from the reasonable meaning of the statute to hold that the complaint shows a contract other than for the sale of goods.

Judgment reversed, with instruction to sustain the demurrer to the complaint.