*Yes.*

---

## FLANAGAN v. FEDERAL COAL COMPANY.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 75. Argued October 15, 1924.—Decided March 2, 1925.

1. A contract of sale between two coal dealers for delivery of coal by the one to the other in car load lots, f. o. b. cars at the mine where produced is a transaction in interstate commerce not subject to be invalidated by a license law of the State, if the buyer, though entitled to stop the coal when so delivered, in practice buys it for shipment to his customers in other States and procures such shipment by orders under which the seller takes bills of lading, in the buyer's name, from the railroad at the mine and consigns the coal to such customers. *Dahnke-Walker. Co.* v. *Bondurant*, 257 U. S. 282. P. 225.

Reversed.

CERTIORARI to a judgment of the Supreme Court of Tennessee which affirmed a judgment against the petitioner in his action for breach of a contract to purchase coal.

*Mr. James J. Lynch,* with whom *Mr. Claiburn H. Garner* was on the brief, for petitioner, relied chiefly on the following cases: *Lemke* v. *Farmers Grain Company,* 259 U. S. 50; *Dahnke-Walker Co.* v. *Bondurant,* 257 U. S. 282; *Railroad Commission* v. *Texas, etc.* 229 U. S. 336; *Texas & N. O. R. R. Co.* v. *Sabine Tram Co.* 227 U. S. 111; *Board of Trade* v. *Olsen,* 261 U. S. 1; *Stafford* v. *Wallace,* 258 U. S. 495; *Swift & Co.* v. *United States,* 196 U. S. 375; *Eureka Pipe Line* v. *Hallanan,* 257 U. S. 265; *United States Fuel Gas Co.* v. *Hallanan,* 257 U. S. 277; *Pennsylvania* v. *West Virginia,* 262 U. S. 553; *Heyman* v. *Hays,* 236 U. S. 176.

*Mr. Chas. C. Moore* for respondent, cited and relied chiefly upon: *Nathan* v. *Louisiana,* 8 How. 73; *Susquehanna Coal Co.* v. *South Amboy,* 228 U. S. 665; *Ware* v. *Mobile County,* 209 U. S. 406; *Transportation Co.* v. *Wheeling,* 99 U. S. 273; *Howe Machine Co.* v. *Gage,* 100 U. S. 679; *Woodruff* v. *Parham,* 8 Wall. 123; *Walling* v. *Michigan,* 116 U. S. 446; *Cornell* v. *Coyne,* 192 U. S. 413; *Heisler* v. *Thomas Colliery,* 260 U. S. 256; *Coe* v. *Errol,* 116 U. S. 517; as illustrating conditions under which property at rest is subject to local taxation, and as authority for the proposition that the coal which Flanagan was selling to the Federal Coal Company was subject to taxation in his hands up to the moment title passed out of him.

There is a wide difference between a sale by a single dealer in grain or live stock, and the organization of a grain exchange, or stock yards, controlling the movement in commerce of a large part of the grain, or live stock, grown in the country.

The principle that the contract must necessarily involve in its execution transportation across state lines in order to be a part of interstate commerce was aptly stated in *United States* v. *Addyston Pipe Co.,* 85 Fed. 298.

Undoubtedly the Federal Coal Company in buying this coal was engaged in interstate commerce. But, if the sale and delivery of the coal by Flanagan was for that reason interstate commerce, then its purchase by him must for the same reason be interstate commerce, because he could not sell and deliver it without first buying it. By the same reasoning the mine operator in selling to him, in mining the coal and employing miners for the purpose, was engaged in interstate commerce, because each was an essential prerequisite of the other.

The Tennessee Supreme Court in construing and applying this local revenue statute in this case has said that the tax is levied not upon the sale but upon the business of dealing, which embraces both buying and selling. The court ruled that Flanagan might sell coal produced by him without paying the tax. He became subject to the tax, not because he made this sale to the Federal Coal Company, but because he engaged in the business of buying and selling coal. While paying the tax, Flanagan had the right to sell and did sell coal to local users. The sale of a part of it to the Federal Coal Company which it shipped out of the State was only an incident of the local business being conducted. The tax is not levied upon the sale for foreign shipment. Even if petitioner Flanagan had engaged exclusively in selling to foreign customers, he would have been charged no higher tax than a competitor engaged exclusively in selling to local customers. There was no discrimination.

Mr. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit for breach of a contract to purchase coal. The only question here is whether the State Courts erred in holding that the plaintiff (Flanagan, the petitioner) could not recover for an undeniable breach because at the time when the defendant, the Federal Company, refused to accept the coal the plaintiff's license as a coal dealer had

expired. The plaintiff says that the transaction was interstate commerce and therefore not subject to such regulation by state laws.

The contract was made on August 19, 1920, and bound the plaintiff to deliver and defendant to accept approximately two hundred cars of Tracy City run of mine coal at nine dollars per ton f. o. b. cars mines, i. e., at Tracy City, Tennessee. Shipments to be approximately fifty cars per month. Time, September 1, 1920, to December 31, 1920. Payments to be made weekly for coal shipped in previous week. The Federal Coal Company bought to sell again. It did not receive the coal itself but gave orders to Flanagan who took bills of lading from the Railroad Company at Tracy City in the name of the Federal Coal Company and consigned the coal to that Company's customers in other States as directed. The Company usually did not sell in Tennessee. It broke off its contract because the price of coal went down and, as it said, its customers refused to keep to their bargains in their turn.

There was some discussion below to show that Flanagan also bought this coal as a dealer and so was subject to the law in respect of this transaction. But for the present purpose it is immaterial how he came by what he sold. For if he was engaged in interstate commerce he could not be impeded because he was a dealer any more than if he was selling from his own mine. It was understood between the parties that these dealings were steps in sending coal from the mines to purchasers in other States. Very likely the Federal Coal Company might have stopped the coal at Tracy City in Tennessee, but it had no thought of doing so and Flanagan understood the course of business in which he was expected to coöperate and did coöperate. Therefore in this matter the parties were engaged in interstate commerce and the state law even if valid as a tax could not invalidate their contract. *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282,

290. *Lemke* v. *Farmers Grain Co.*, 258 U. S. 50. *A. G. Spalding & Bros.* v. *Edwards*, 262 U. S. 66, 69, 70. We see no sufficient reason for believing that the decision would have been the same if the State Court had regarded the transactions as interstate commerce and therefore its decision must be reversed.

*Judgment reversed.*