·1004

Maurice B. Rich, of New York City, for appellant.

Wickes & Neilson, of New York City (Herman E. Riddell and Gabriel E. Torre, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

### L. HAND, Circuit Judge.

The plaintiff is a corporation, organized under the laws of Washington; the defendant another, organized under those of New York. On March 11, 1930, the parties tentatively agreed orally for the sale by the plaintiff to the defendant of three hundred thousand feet of "small timbers," and between three hundred and three hundred and fifty-thousand feet of "underflooring." The plaintiff confirmed the talk by letter on the same day, asking for "specifications * * * on the small timbers." This the defendant answered, giving such "specifications," but without exactly allocating the quantities to each size. It asked for shipment on April first. The plaintiff replied on March fourteenth by a document called an "Order Acknowledgment." This contained a detailed statement of the terms of sale, including credit, date of shipment (April), a clause for arbitration by "the Arbitration committee of any lumber association purchaser may elect," and other provisions. It definitely allocated the quantity for each size of the "small timbers," which were to be shipped from Seattle, and it omitted the "underflooring." It concluded: "Unless notified to the contrary at once, order will be executed as written above and is final and binding on both of us." The defendant kept this paper without objection, and the plaintiff shipped from Seattle three hundred thousand feet of "small timbers," distributed by size and quantity according to its terms, which arrived in New York on June eleventh, and which the defendant accepted. In December, some months after expiration of the stipulated credit, the plaintiff sued at law for the purchase price in the state court. The defendant answered, denying delivery, and alleging late shipment as a defence and counterclaim. It also pleaded that the contract had provided for arbitration, and that the defendant "had offered and by its answer renews its offer to submit the differences or controversies to arbitration." The plaintiff replied to the counterclaim in January, 1931, and noticed the cause for trial in March, the defendant serving a cross notice on the following day. In July, the plaintiff unsuccessfully moved for a voluntary dismissal, and on August sixth wrote the defendant accepting its offer to arbitrate contained in the answer, and asking it to select the arbitrator. The defendant refused and this suit, specifically to enforce the contract, followed on August twenty-fourth. The judge granted an order compelling the defendant to arbitrate and appointing arbitrators, and the defendant appealed.

■ We held in Marchant v. Mead-Morrison Co., 29 F.(2d) 40, that such a suit could not be removed to a federal court after the arbitrators had been appointed and had made their award, because the proceeding is single until its conclusion. It does not follow that the order appointing arbitrators is not appealable under section 225 of title 28. The purpose of arbitration is essentially an escape from judicial trial; the court takes a hand only so far as some sanction is necessary to compel performance of the agreement to adopt the means provided. It is true that under section 9 of title 9 (USCA) the successful party may enforce the award by judgment, on which execution will go under section 13. But the judgment follows automatically unless the award has been vacated under section 10, and that is an independent application. So far as the arbitration proceeding itself is concerned, the last deliberative action of the court is the appointment of the arbitrators, who thereupon take over the controversy and dispose of it. Their disposition is not, properly speaking, reviewed by the court, in spite of possible disturbance under sections 10 and 11. It seems to us therefore that the decree is final and appealable.

1006

We have no doubt that the District Court had jurisdiction over the suit. A difficulty might arise if jurisdiction depended only upon the fact that the contract "involved commerce," that is, required shipment from one state to another; but the statute does not rest the court's power on that ground. Therefore, we need not consider the scope of the doctrine of such cases as Sioux Remedy Co. v. Cope, 235 U. S. 197, 35 S. Ct. 57, 59 L. Ed. 193; Furst v. Brewster, 282 U. S. 493, 51 S. Ct. 295, 75 L. Ed. 478; Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 S. Ct. 106, 66 L. Ed. 239; Flanagan v. Federal Coal Co., 267 U. S. 222, 45 S. Ct. 233, 69 L. Ed. 583. The text is entirely clear that the court must be one "which, save for such agreement, would have jurisdiction * * * of the subject matter." Section 4 of title 9 USCA. The remedy is not even coextensive with the jurisdiction; for instance, the controversy may arise between citizens of different states, and the contract not "involve commerce." A citizen of New Jersey may enforce arbitration against a citizen of New York upon a contract of sale which requires him to ship the goods from Newark to Manhattan, but not upon one where they are to go from Manhattan to the Bronx. Conversely, a citizen of New York may not come to the District Court to enforce arbitration against another citizen of that state, though the goods must be shipped across a state line. In the case at bar both conditions were fulfilled; the parties were citizens of different states, and performance involved an interstate shipment.

Coming to the merits, the first question is whether the pendency of the action upon the contract in the state court was a bar. That action was at law, ignoring the arbitration clause; this suit is in equity upon that clause. The causes of action are no doubt the same; but it is well settled that the plea of lis alio pendens is bad when the other suit is in a state court. Stanton et al. v. Embrey, 93 U. S. 548, 23 L. Ed. 983; Gordon v. Gilfoil, 99 U. S. 168, 178, 25 L. Ed. 383; McClellan v. Carland, 217 U. S. 268, 282, 30 S. Ct. 501, 54 L. Ed. 762; Kline v. Burke Construction Co., 260 U. S. 226, 230, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077.

That a contract was made which included the arbitration clause, is clear. The defendant's specifications had to some extent left at large the allocation of sizes to quantities; and this was defined by the "order acknowledgment." This also changed the date of shipment proposed, "April 1" to "April," fixed the terms of payment, excluded the underflooring, and inserted many other terms, among them the arbitration clause. It is true therefore that unless the defendant assented to these changes, no contract arose. It did assent. It retained the "order acknowledgment" without objection, and it received the lumber when it arrived. Its silence alone, considering the prior dealings between the parties, and the concluding clause of the "order acknowledgment," could only have been interpreted as an acceptance, and its receipt of the lumber foreclosed any doubt, if doubt there were. Restatement of Contracts, §§ 72 (1) (a), 72 (2).

Finally, the defendant insists that the plaintiff forfeited its remedy when it brought the action in the state court. The question is one of contract only, for the statute does not impose any condition upon the remedy, presupposing that it merely enforces the promise to submit controversies to arbitration. Its propriety must therefore be decided as though the promisee were suing for damages. The state action was indeed a repudiation of the plaintiff's own promise to arbitrate; it gave the defendant an election, taking the plaintiff at its word, to put an end to the arbitration clause, or to insist upon performance. By its plea in the answer it chose the second course. Hosiery Mfrs.' Corp. v. Goldston, 238 N. Y. 22, 143 N. E. 779. It is true that it did not follow this up by selecting an arbitrator as it had promised to do. Until it did, it was therefore not in position to enjoin prosecution of the action under section 5 of the New York Arbitration Act (Consol. Laws N. Y. c. 72) and delay to do so might indeed forfeit its recourse to that remedy. Nagy v. Arcas Brass & Iron Co., 242 N. Y. 97, 150 N. E. 614. But, so far as concerned the plaintiff's repudiation, it had chosen not to call off the clause, not to "rescind" it; and it could not prevent the plaintiff's resumption of the remedy, while its own position remained unchanged. Landes v. Klopstock, 252 F. 89 (C. C. A. 2); Miami Cycle, etc., Co. v. Robinson, 245 F. 556, 562 (C. C. A. 6); United Press Assoc. v. National Newspaper Assoc., 237 F. 547, 554 (C. C. A. 8).

So matters stood when the plaintiff served its notice of trial. If this can be taken as a renewed insistence upon pressing the action, the cross notice was equally an insistence upon the defendant's position in its answer, and the relative positions of both parties remained unchanged until July, when the plaintiff tried to discontinue. This was avowedly for the purpose of seeking arbitration; the

moving affidavit so stated. The defendant in its opposing affidavit did not expressly withdraw its offer, though it argued that it was then too late to arbitrate. If its opposition is to be taken as a withdrawal, at least the plaintiff's motion must be taken as an acceptance, and the situation was then the same as it afterwards became formally. After its failure the plaintiff accepted the offer by letter, and it was then only that the defendant expressly withdrew. This was too late. We may assume that until such acceptance the defendant could have changed its mind, but when the plaintiff had availed of the locus pœnitentiæ given it, it changed its position, and rescission was no longer open. It is true that the plaintiff would not suffer, if forced back to prosecuting the action; it would be in its old position; it had not been hurt by accepting the offer. But, although the rights of the parties are measured by equitable considerations, these prevent a party from playing fast and loose with his adversary. Had the defendant suffered any but nominal damages from the breach, they might still be recoverable; but to succeed here it must "rescind." It must disengage itself from its insistence upon performance after the plaintiff has repented, and although it has not itself suffered by the delay. This it should not be permitted to do. Therefore the plaintiff was free to seek specific performance as though it had never brought the action.

Decree affirmed.

Circuit Court of Appeals, Second Circuit.
Feb. 6, 1933.