**CITY OF ATLANTA v. NATIONAL BITUMINOUS COAL COMMISSION et al.**

Civ. No. 188.

District Court of the United States for the District of Columbia.

Feb. 16, 1939.

Charles S. Rhyne, of Washington, D. C., for plaintiff.

Robert L. Stern, Sp. Asst. to Atty. Gen., and Robert W. Knox, Gen. Counsel, National Bituminous Coal Commission, of Washington, D. C., for defendants.

Before MILLER, Associate Justice, United States Court of Appeals for the District of Columbia, and WHEAT, Chief Justice, and ADKINS, Associate Justice, District Court of the United States for the District of Columbia. [1]

MILLER, Associate Justice.

Plaintiff seeks an injunction to restrain and enjoin defendants, the National Bituminous Coal Commission, and its members, from promulgating orders fixing minimum prices for the sale of coal, from enforcing or attempting to enforce any order that may have been promulgated by said Commission, or any other orders affecting the plaintiff in the respects set forth in its complaint, or from instituting or taking any action or proceedings to compel obedience to such orders. It demands that the court adjudge and declare that the National Bituminous Coal Act, 15 U.S.C.A. § 828 et seq., is contrary to the Constitution of the United States; that the Commission is without authority to promulgate minimum price orders; that if the said Commission shall issue minimum price orders said orders are not applicable to plaintiff or any coal purchased by it. Defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted. A Three-Judge Statutory Court was designated to sit in the case and it was heard upon the motion to dismiss.

We assume that there are sufficient well pleaded allegations in the complaint to show that the plaintiff has legal standing which permits it to bring this suit; [2] that under

---

[1] Act of August 24, 1937, c. 754, 50 Stat. 751, 28 U.S.C.A. § 380a.

[2] Cf. State of Colorado v. Toll, 268 U. S. 228, 45 S.Ct. 505, 69 L.Ed. 927; Com. of Pennsylvania v. State of West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300; Ashton v. Cameron County Water Improvement Dist., 298 U.S. 513, 527–530, 56 S.Ct. 892, 80 L. Ed. 1309.

the circumstances pleaded it was under no obligation to avail itself of administrative remedies before asking this court for relief;[3] that the suit is not premature[4] to the extent that it is "intended to avert a present wrong, though the wrong upon analysis will [may] be found to be unreal";[5] hence that in what follows we are not improperly anticipating a question of constitutional law in advance of the necessity of deciding it.[6]

■ Plaintiff contends that the commerce clause does not confer upon the Federal Government power to fix prices of coal. It is conceded that the coal which plaintiff uses must be received by it in interstate commerce as it is all mined in states other than Georgia. Consequently, the challenge to the exercise of federal power must be considered in the light of this concession, and of the well established law that although the production of coal in and of itself may not constitute interstate commerce,[7] the sale and shipment of that coal, or the contracting to sell and ship, to customers in another state, does.[8]

■ The vital question remaining, then, is whether the regulatory authority of Congress over interstate commerce permits it to establish prices of coal sold in that com-

[3] Utah Fuel Co. v. National Bituminous Coal Comm., decided January 30, 1939, 59 S.Ct. 409, 83 L.Ed. ——.

[4] Cf. Com. of Pennsylvania v. State of West Virginia, supra note 2; Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 386, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016.

[5] Cardozo, J., dissenting in Carter v. Carter Coal Co., 298 U.S. 238, 324, 56 S.Ct. 855, 878, 80 L.Ed. 1160.

[6] Helvering v. Davis, 301 U.S. 619, 639–640, 57 S.Ct. 904, 908, 81 L.Ed. 1307, 109 A.L.R. 1319: "The writer of this opinion believes that the remedy is ill conceived, that in a controversy such as this a court must refuse to give equitable relief when a cause of action in equity is neither pleaded nor proved, and that the suit for an injunction should be dismissed upon that ground. He thinks this course should be followed in adherence to the general rule that constitutional questions are not to be determined in the absence of strict necessity. In that view he is supported by Mr. Justice Brandeis, Mr. Justice Stone, and Mr. Justice Roberts. However, a majority of the court have reached a different conclusion. They find in this case extraordinary features making it fitting in their judgment to determine whether the benefits and the taxes are valid or invalid. They distinguish Norman v. Consolidated Gas Co., 89 F.2d 619, recently decided by the Circuit Court of Appeals for the Second Circuit, on the ground that in that case the remedy was challenged by the company and the Government at every stage of the proceeding, thus withdrawing from the court any marginal discretion. The ruling of the majority removes from the case the preliminary objection as to the nature of the remedy which we took of our own motion at the beginning of the argument. Under the compulsion of that ruling, the merits are now here." See Liverpool, New York & Philadelphia Steamship Co. v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899; Abrams v. Van Schaick, 293 U.S. 188, 55 S.Ct. 135, 79 L.Ed. 278; Wilshire Oil Co., Inc. v. United States, 295 U.S. 100, 55 S.Ct. 673, 79 L.Ed. 1329; Brandeis, J., concurring in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–347, 56 S.Ct. 466, 80 L.Ed. 688.

[7] Oliver Iron Mining Co. v. Lord, 262 U.S. 172, 178, 43 S.Ct. 526, 67 L.Ed. 929; Delaware, Lack. & Western R. R. v. Yurkonis, 238 U.S. 439, 35 S.Ct. 902, 59 L.Ed. 1397; United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 407, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 465, 58 S.Ct. 656, 82 L.Ed. 954; Anderson v. Shipowners' Ass'n, 272 U.S. 359, 364, 47 S.Ct. 125, 71 L.Ed. 298.

[8] Carter v. Carter Coal Co., 298 U.S. 238, 303, 56 S.Ct. 855, 80 L.Ed. 1160; Flanagan v. Federal Coal Co., 267 U.S. 222, 45 S.Ct. 233, 69 L.Ed. 583; Pennsylvania R. R. v. Clark Brothers Coal Mining Co., 238 U.S. 456, 468, 35 S.Ct. 896, 59 L.Ed. 1406. See Currin v. Wallace, 59 S.Ct. 379, 83 L.Ed. ——; Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 290 et seq., 42 S.Ct. 106, 66 L.Ed. 239; United States v. E. C. Knight Co., 156 U.S. 1, 13, 15 S.Ct. 249, 39 L.Ed. 325; Lemke v. Farmers Grain Co., 258 U.S. 50, 55–60, 42 S.Ct. 244, 66 L.Ed. 458; Federal Trade Comm. v. Pacific States Paper Trade Ass'n, 273 U.S. 52, 64, 47 S.Ct. 255, 71 L.Ed. 534; State Corp. Comm. v. Wichita Gas Co., 290 U.S. 561, 563, 54 S.Ct. 321, 78 L.Ed. 500; National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 40 et seq., 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Public Utilities Comm. v. Attleboro Steam & Elec. Co., 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549.

merce. That it has power so to control interstate commerce as to affect prices indirectly there can be no doubt because the fixing of rates for transportation,[9] and the regulation of conditions of labor,[10] must necessarily affect prices in many cases.[11]

In Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469, it was held that the states have power to fix prices in the regulation of their internal commerce under the police power. There is no reason to deny to Congress a commensurate power with respect to the regulation of interstate commerce.[12]

Moreover, it seems to be implicit in the language of several decisions of the Supreme Court, that Congress, in the regulation of interstate commerce, has power to fix prices.[13] To hold that it has not such power when its exercise may be, in many cases, the only method of protecting such commerce would create a sphere in which commerce would be free of all regulation. "This cannot be the case."[14]

■ In view of its broad power to regulate interstate commerce,[15] "It was for Congress to decide, from its general information and from such special evidence as was brought before it, the nature of the evils actually present or threatening, and to take such steps by legislation within its power as it deemed proper to remedy them."[16] This it did in the enactment of the National Bituminous Coal Act.

■ Plaintiff contends further that the Act is unconstitutional because it violates the due process clause of the Fifth Amendment, U.S.C.A.Const. It is true that the power of Congress to regulate commerce "must be exercised in subjection to the guarantee of due process of law" found in

---

[9] Interstate Commerce Act, 24 Stat. 379, 384, as amended by the Act of June 29, 1906, 34 Stat. 584, 589, 49 U.S.C.A. §§ 1, 15. See Dayton-Goose Creek Ry. v. United States, 263 U.S. 456, 478, 44 S. Ct. 169, 68 L.Ed. 388, 33 A.L.R. 472.

[10] National Labor Relations Act of 1935, 49 Stat. 449, 29 U.S.C.A. § 151 et seq. (Supp.1938).

[11] See also, George Van Camp & Sons Co. v. American Can Co., 278 U.S. 245, 49 S.Ct. 112, 73 L.Ed. 311, 60 A.L.R. 1060 (action under Clayton Act prohibiting discrimination in price between different purchasers); Biddle Purchasing Co. v. Federal Trade Comm., 2 Cir., 96 F. 2d 687, cert. denied, 59 S.Ct. 101, 83 L. Ed. — (action under Robinson-Patman Price Discrimination Act); Nebbia v. New York, 291 U.S. 502, 529, 54 S.Ct. 505, 512, 78 L.Ed. 940, 89 A.L.R. 1469: "Legislation concerning sales of goods, and incidentally affecting prices, has repeatedly been held valid. In this class fall laws forbidding unfair competition by the charging of lower prices in one locality than those exacted in another, by giving trade inducements to purchasers, and by other forms of price discrimination. The public policy with respect to free competition has engendered state and federal statutes prohibiting monopolies, which have been upheld."

[12] Hughes, C. J., concurring in Carter v. Carter Coal Co., 298 U.S. 238, 319, 56 S.Ct. 855, 80 L.Ed. 1160. See Northern Securities Co. v. United States, 193 U.S. 197, 332, 339, 342, 24 S.Ct. 436, 48 L.Ed. 679; Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229. See also, Feldman, Legal Aspects of Federal and State Price Control, 16 B.U.L.Rev. 570, 586 et seq.

[13] Public Utilities Comm. v. Attleboro Steam & Elec. Co., 273 U.S. 83, 90, 47 S. Ct. 294, 71 L.Ed. 549; Lemke v. Farmers Grain Co., 258 U.S. 50, 61, 42 S.Ct. 244, 66 L.Ed. 458; Shafer v. Farmers' Grain Co., 268 U.S. 189, 202, 45 S.Ct. 481, 69 L.Ed. 909.

In Highland v. Russell Car & Snowplow Co., 279 U.S. 253, 261, 49 S.Ct. 314, 316, 73 L.Ed. 688, the Supreme Court sustained an act of Congress regulating the price of coal as a valid exercise of the war power. In so holding the Court said that Congress may so act "whenever reasonably necessary to effect any of the great purposes for which the national government was created." See Board of Trade of City of Chicago v. Olsen, 262 U.S. 1, 39, 40, 43 S.Ct. 470, 67 L.Ed. 839.

[14] Addyston Pipe and Steel Co. v. United States, 175 U.S. 211, 231, 20 S.Ct. 96, 104, 44 L.Ed. 136. See 4 Letters and Writings of James Madison (1865) 250: "The powers of government in our political system are divided between the States in their united capacity and in their individual capacities. The powers, taken together, ought to be equal to all the objects of Government, not specially excepted for special reasons, as in case of duties on exports; or not inconsistent with the principles of Republican Government."

[15] United States v. Carolene Products Co., 304 U.S. 144, 147, 58 S.Ct. 778, 82 L.Ed. 1234.

[16] Stafford v. Wallace, 258 U.S. 495, 513, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L. R. 229.

that amendment.[17] But the restriction thus imposed is at most no greater than that imposed by the Fourteenth Amendment upon the police power of the states[18] and does not require that freedom of competition or of contract shall be preserved either to the individual or to the state,[19] if to do so results in destructive interference with interstate commerce.[20] Moreover, the question here is not whether Congress, in using the method of price fixing, has adopted a sound policy,[21] but it is, instead, whether the means which it has chosen are appropriate to the permissible end, i. e., the regulation of commerce.[22] When the means chosen are appropriate, there is little scope for the operation of the due process clause.[23] As was said by the Court in Nebbia v. New York, 291 U. S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940, 89 A.L.R. 1469: "If the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court functus officio. * * * And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise." Again, in Northern Securities Co. v. United States, 193 U.S. 197, 337, 24 S.Ct. 436, 457, 48 L.Ed. 679, the Court, in sustaining the Federal Anti-Trust law, 15 U. S.C.A. § 1–7, 15 note, said: "Whether the free operation of the normal laws of competition is a wise and wholesome rule for trade and commerce is an economic question which this court need not consider or determine."

In our view, the methods adopted by Congress in the present case are appropriate to a permissible end. They are neither arbitrary nor discriminatory. The soft coal industry supplies the nation with its primary source of energy, vitally essential to the existence of the country's industries, and to the health and comfort of its inhabitants. Conditions in the marketing of coal have long been more or less chaotic, with the result that the flow of commerce in coal has been seriously burdened and impaired. It was to eradicate this evil, and to prevent its recurrence, that Congress acted thus to protect interstate commerce.[24]

[17] Railroad Retirement Board v. Alton R. R., 295 U.S. 330, 347, 55 S.Ct. 758, 761, 79 L.Ed. 1468. See also, Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U.S. 146, 156, 40 S.Ct. 106, 64 L.Ed. 194.

[18] See United States v. Carolene Products Co., 304 U.S. 144, 147, 58 S.Ct. 778, 82 L.Ed. 1234; Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Hamilton v. Kentucky Distilleries & Warehouse Co., supra note 17.

[19] See United States v. California, 297 U.S. 175, 184, 185, 56 S.Ct. 421, 80 L. Ed. 567; Highland v. Russell Car & Snowplow Co., 279 U.S. 253, 261, 49 S. Ct. 314, 73 L.Ed. 688; Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 558, 57 S.Ct. 592, 81 L.Ed. 789. See also, West Coast Hotel Co. v. Parrish, 300 U.S. 379, 392, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330, and cases there cited.

[20] See Biddle Purchasing Co. v. Federal Trade Comm., 2 Cir., 96 F.2d 687, 692, cert. denied, 59 S.Ct. 101, 83 L.Ed. ——; Stafford v. Wallace, 258 U.S. 495, 42 S. Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 437, 438, 50 S.Ct. 220, 74 L.Ed. 524; United States v. Joint Traffic Ass'n., 171 U.S. 505, 571–573, 19 S.Ct.

25, 43 L.Ed. 259; Addyston Pipe and Steel Co. v. United States, 175 U.S. 211, 228–229, 20 S.Ct. 96, 44 L.Ed. 136; United Shoe Machinery Corp. v. United States, 258 U.S. 451, 458–464, 42 S. Ct. 363, 66 L.Ed. 708.

[21] Hughes, C. J., concurring in Carter v. Carter Coal Co., 298 U.S. 238, 319, 56 S.Ct. 855, 80 L.Ed. 1160. See Gant v. Oklahoma City, 289 U.S. 98, 102, 53 S. Ct. 530, 77 L.Ed. 1058; Standard Oil Co. v. Marysville, 279 U.S. 582, 584, 49 S.Ct. 430, 73 L.Ed. 856; South Carolina State Highway Dept. v. Barnwell Brothers, Inc., 303 U.S. 177, 190–191, 58 S.Ct. 510, 82 L.Ed. 734.

[22] West Coast Hotel Co. v. Parrish, 300 U.S. 379, 397–398, 57 S.Ct. 578, 81 L. Ed. 703, 108 A.L.R. 1330; Nebbia v. New York, 291 U.S. 502, 525, 54 S. Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Biddle Purchasing Co. v. Federal Trade Comm., supra note 20. See Helvering v. Davis, 301 U.S. 619, 640, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319.

[23] Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 558, 57 S.Ct. 592, 81 L.Ed. 789.

[24] H.R.Rep. No. 294, 75th Cong., 1st Sess. 1, 2; Sen.Rep. No. 252, 75th Cong., 1st Sess. 1–3. Cardozo, J., dissenting in Carter v. Carter Coal Co., 298 U.S. 238, 330–332, 56 S.Ct. 855, 80 L.Ed.

■ Neither does the Act in its price fixing provisions make an excessive delegation of legislative power. It prescribes a procedure to be followed in finding facts and making determinations therefrom. It declares specifically under what circumstances prices may be fixed; and the orders of the Commission can be made only after notice and hearing.[25]

The standards established by the Act are equally as definite as those provided by other acts which have been approved by the Supreme Court.[26] The inadequacy of standards which appeared in other acts condemned by that Court do not appear in the National Bituminous Coal Act.[27]

■ Finally, we hold that the Act constitutes no infringement of the sovereign powers of the City of Atlanta—a governmental subdivision of the State of Georgia—and no usurpation of powers reserved to the states by the Tenth Amendment, U.S.C.A.Const. As the fixing of coal prices, as provided by the Act, comes properly within the scope of the commerce clause, U.S.C.A.Const. art. 1, § 8, cl. 3, conflicting powers of the State must give way so far as may be necessary.[28]

The application for injunction, therefore, will be denied, and the motion to dismiss will be granted. Counsel will submit the appropriate order.

WHEAT, Chief Justice, and ADKINS, Associate Justice, concur.

1160. See Stafford v. Wallace, 258 U. S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Hoke and Economides v. United States, 227 U.S. 308, 323, 33 S. Ct. 281, 57 L.Ed. 523, 43 L.R.A.,N.S., 906, Ann.Cas.1913E, 905. Cardozo, J., dissenting in Mayflower Farms, Inc. v. Ten Eyck, 297 U.S. 266, 276, 56 S.Ct. 457, 460, 80 L.Ed. 675: "The judicial function is discharged when it appears from a survey of the scene that the lawmakers did not play the part of arbitrary despots in choosing as they did." Cf. Chas. Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 536–538, 43 S.Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280.

25 See §§ 2(a), 4 pt. 1(a), pt. 2(a–d), 50 Stat. 72, 76, 77, 15 U.S.C.A. §§ 829, 832, 833.

26 Cardozo, J., dissenting in Carter v. Carter Coal Co., 298 U.S. 238, 333, 56 S.Ct. 855, 80 L.Ed. 1160, and cases there cited. See also, Currin v. Wallace, 59 S.Ct. 379, 83 L.Ed. ——; J. W. Hampton,

Jr., & Co. v. United States, 276 U.S. 394, 405, 48 S.Ct. 348, 72 L.Ed. 624; Panama Refining Co. v. Ryan, 293 U. S. 388, 426 et seq., 55 S.Ct. 241, 79 L. Ed. 446. See generally, Hartman, Jr., Shilling and Wise, Constitutionality of AAA Processing and Floor Stocks Taxes, 4 Geo.Wash.L.Rev. 43, 50 et seq.

27 For example, in A.L.A. Schechter Poultry Corp. v. United States, 295 U. S. 495, 537–538, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, and Panama Refining Co. v. Ryan, 293 U.S. 388, 414, 55 S.Ct. 241, 79 L.Ed. 446, the Supreme Court in effect held that in each case the act purported to give authority to write completely new statutes. In neither of these cases was there a criterion to govern the President's course.

28 United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567. See also, Board of Trustees v. United States, 289 U.S. 48, 57, 59, 53 S.Ct. 509, 77 L. Ed. 1025.