In the Matter of JOHN I. DE KORTE, Doing Business as MILAN-VILLE DAIRY, Petitioner, against C. CHESTER DU MOND, as Commissioner of Agriculture and Markets of the State of New York, Respondent.

Third Department, January 7, 1948.

*Harry L. Marcus,* attorney (*Herbert L. Maltinsky* of counsel), for petitioner.

*Donald L. Brush,* counsel to Department of Agriculture and Markets, attorney (*Robert G. Blabey* of counsel), for respondent.

DEYO, J. The petitioner is a resident of New Jersey and heretofore has operated a milk station and creamery at Milanville, Pennsylvania, whereat raw milk is received from producers and thereafter shipped to buyers in New Jersey and elsewhere. He has now acquired property in Delaware County, New York, where he proposes to erect a receiving station, and for that purpose made application for a New York State dealer's license for the license year ending March 31, 1947.

Early in February of 1946, petitioner commenced to purchase milk from New York State farmers, pursuant to contracts which called for delivery f. o. b. Milanville, Pennsylvania. Upon his failure to apply for a license the Commissioner instituted an action against him and secured a temporary injunction restraining him from purchasing or handling milk *within* the State, which was sustained on appeal to this court. (*Du Mond* v. *De Korte,* 270 App. Div. 1062.) Thereupon petitioner made application for a license, which was refused after a hearing, on the grounds that he had violated the provisions of section 257 of the Agriculture and Markets Law and that the Commis-

sioner was not satisfied that applicant was " qualified by character to conduct the proposed business."

Section 257 of the Agriculture and Markets Law provides in part that, " No milk dealer shall buy milk from producers or others or deal in, handle, sell or distribute milk unless such dealer be duly licensed as provided in this article." A violation of this section constitutes grounds for the denial of a license. (Agriculture and Markets Law, § 258-c, subd. k; *Matter of Dusinberre* v. *Noyes,* 263 App. Div. 445; *Matter of Reynolds* v. *Noyes,* 263 App. Div. 907.) Section 258-c of the Agriculture and Markets Law further provides in part that no license shall be granted " unless the commissioner is satisfied that the applicant is qualified by character, experience, financial responsibility and equipment to properly conduct the proposed business, that the issuance of the license will not tend to a destructive competition in a market already adequately served, and that the issuance of the license is in the public interest." Respondent admitted by his answer that the petitioner was qualified by experience and financial responsibility and had sufficient and adequate equipment and facilities to conduct the proposed business, and specifically made no finding as to whether the granting of the license would result in destructive competition or was against the public interest. The evidence and the findings relative to the petitioner's character are confined to his activities procuring milk in New York State without a license, alleged to be in violation of section 257 of the Agriculture and Markets Law. The sole issue presented, therefore, is whether or not these activities constituted a violation of that statute.

The evidence and the findings upon which the Commissioner based his conclusion that a violation of the statute had been committed, are to the effect that the petitioner solicited producers in this State, and purchased milk from them, which was picked up in a truck operated by an employee of the petitioner; that petitioner also furnished the gasoline for the operation of the truck and the ice to keep the milk cool while it was being transported to the petitioner's plant in Pennsylvania, the producers paying only what it would cost to haul the milk to the nearest plant in this State, and further, that the petitioner loaned certain producers coolers to use on their farms. It has been the petitioner's contention both in this proceeding and in the earlier one dealing with the injunction, that he was at no time engaged in business in this State, and hence, was not required by section 257 of the Agriculture and Markets Law to obtain a license, and also that the transaction was one of

interstate commerce specifically and necessarily made exempt by section 258-j of the Agriculture and Markets Law from the New York State licensing requirements.

When the matter was previously before this court, it was pointed out that the petitioner could not legally purchase or handle milk *within* this State without a license. Whether or not his activities amounted to such a purchase or handling, was not determined. (*Du Mond* v. *De Korte,* 270 App. Div. 1062, *supra.*) The whole pattern of petitioner's activities point conclusively to an out-of-State transaction. His solicitation of local producers was but a part of an ultimate out-of-State sale. His contracts with the producers called for out-of-State deliveries. His payment of part of the costs of transportation and for the icing of milk enroute do no violence to the out-of-State aspect of the business he was carrying on. In fact, the payment of a portion of the costs of transportation was in strict compliance with order G-15 under Maximum Price Regulation 329, governing the purchase of milk by an out-of-State dealer from producers located within the State of New York. The loaning of coolers to certain producers without a milk dealer's license is nowhere prohibited by the statute. Since the petitioner was not purchasing or handling milk within the State of New York, there was no violation of section 257 of the Agriculture and Markets Law, and the respondent's conclusions to that effect are not supported by the evidence or the findings.

Furthermore, even though it be assumed that petitioner's activities did in some respect constitute buying, dealing in or handling milk within the State, the conclusion drawn therefrom, that section 257 of the Agriculture and Markets Law was thereby violated, cannot be sustained.

The right to send an article of commerce, and certainly milk is such an article, from one State to another; and the act of doing so constitute interstate commerce, the regulation of which has been committed to Congress (U. S. Const., art. I, § 8, cl. 3), to the exclusion of State interference. (*Kirmeyer* v. *Kansas,* 236 U. S. 568.) This exemption of transactions of this type is specifically and necessarily recognized in section 258-j of the Agriculture and Markets Law.

It would seem obvious that a transaction whereby milk produced in this State was purchased by and delivered to a Pennsylvania dealer, constitutes interstate commerce. (*Baldwin* v. *G. A. F. Seelig, Inc.,* 294 U. S. 511.) Similar decisions have been reached in the case of other commodities grown or produced in one State and sent elsewhere for sale or processing. **Beef**

cattle (*Stafford* v. *Wallace,* 258 U. S. 495; *Swift & Co.* v. *U. S.,* 196 U. S. 375); grain (*Shafer* v. *Farmers Grain Co.,* 268 U. S. 189; *Lemke* v. *Farmers Grain Co.,* 258 U. S. 50); coal (*Flanagan* v. *Federal Coal Co.,* 267 U. S. 222); tobacco (*Currin* v. *Wallace,* 306 U. S. 1).

When the actual movement of the commodity is interstate, payment of transportation charges and the point of delivery, even if within the State of origin, do not affect the character of the transaction. (*Santa Cruz Co.* v. *N. L. R. B.,* 303 U. S. 453, 463.) The solicitation of producers and the actual purchase of the milk, although taking place in this State, still are a part of the commerce. (*Currin* v. *Wallace,* 306 U. S. 1, 10, *supra.*) Even if title to the milk had passed to the petitioner within this State as the respondent argues, and even though the petitioner had it within his power to dispose of the milk within the State, since he did not do so, the transaction would still have been one of interstate commerce. (*Flanagan* v. *Federal Coal Co., supra.*) The question herein raised has been squarely passed upon by the United States Supreme Court, in relation to licensing provisions covering the purchase and sale of other commodities. In *Lemke* v. *Farmers Grain Co.* (*supra*) North Dakota statutes required purchasers of grain to obtain a license, pay a license fee and conform to certain regulations. The grain company was the owner of an elevator, and purchaser of grain bought in North Dakota to be shipped out of the State. The court held that this course of dealing, including the purchase of the grain from local growers, constituted interstate commerce, and as such could not be regulated by a State statute. Similar decisions were reached for the same reasons in *Shafer* v. *Farmers Grain Co.* (*supra*) and *Flanagan* v. *Federal Coal Co.* (*supra*).

It is of course true that a State may exercise its police power directed to the control of purely local conditions, even though by so doing interstate commerce may be incidentally or indirectly burdened. It was on this theory that the court proceeded in reaching its decision in *Market Control Board* v. *Eisenberg Farm Products* (306 U. S. 346). There a Pennsylvania corporation maintained a receiving station in that State where it conducted a purely local business of buying milk from the neighboring Pennsylvania farmers, which it subsequently shipped into New York State. The question was whether or not the dealer was required to obtain a Pennsylvania State license before he could purchase the milk. No effort was made to apply the statute to the resale thereof in New York. The court held that the situation between the dealer and the producers, both of whom were resi-

dents, was so local in scope that State regulation was justified, the effect on interstate commerce being purely incidental. The distinction between this case and the one at bar is of course obvious. There, the sale and the delivery took place in the State of origin, where both parties resided, and was purely local in character. No interstate features were present so far as the relation between the dealer and the producer were concerned, and it was this relation which the State statute sought to regulate. In the instant case, the sale and the point of delivery took place outside the State of origin, and the transaction between residents of sister States was from the very outset interstate in nature.

The determination of respondent that the petitioner had violated section 257 of the Agriculture and Markets Law and was not qualified by character to conduct the proposed business is contrary to the law and facts and *must* be annulled, with $50 costs and disbursements. No direction is given for the issuance of a license, since the licensing period has already expired.

HILL, P. J., HEFFERNAN, FOSTER and RUSSELL, JJ., concur.

Determination annulled on the law and facts, with $50 costs and disbursements.