GROSS INCOME TAX DIVISION OF THE STATE OF INDIANA ET AL. *v.* W. B. CONKEY COMPANY

[No. 28,547. Motion to Dismiss Appeal overruled November 21, 1949. Decision on Appeal filed March 17, 1950. Rehearing denied May 25, 1950.]

Emmert and Young, J. J., not participating.

*J. Emmett McManamon,* Attorney General; *John J. McShane, Lloyd C. Hutchinson* and *Edward L. Hamilton,* Deputy Attorneys General, for appellants.

*Charles G. Bomberger;* and *Bomberger, Morthland & Royce,* all of Hammond, for appellee.

STARR, J.—This is an action by the appellee, a foreign corporation licensed to do business in Indiana, to recover certain sums paid as taxes, under the Gross Income Tax Act of Indiana, for the years 1941 and 1942. The provisions of this Act, under which these taxes were imposed, are set out in § 64-2602, Burns' 1943 Replacement.

The income from which the taxes involved in this case arose was derived from the printing and binding by appellee of books for its various customers and from the sale of bookcases by it to one of these customers. The appellee maintained a large printing and binding establishment at Hammond, Indiana. It was at this establishment that all the books were produced and all the bookcases were sold.

The business of printing and binding books was conducted in the following manner: All of the books were made by appellee on order of its various customers who were in each instance the publisher of the book to be made. For this work to be performed appellee entered into formal written contracts with its customers, except in case of a few of its well-known customers the contractual relation was established by correspondence rather than in a formal type of contract.

By the terms of all these orders or contracts the publisher customer would furnish the manuscript containing the copy which was to be produced in printed form and bound into a book. This manuscript remained the property of the customer. In these contract orders the appellee furnished all the material used in the making of the books except in certain instances the customer furnished the paper so used.

After the books were finished appellee was obligated to pack them for shipment. All of these books were to be delivered by the appellee to the carrier.

All shipments were in the name of the customer to the one designated by the customer's written shipping order instruction. Generally the shipping order was that the books should be sent in the name of the customer to the one to whom he had made a sale of the books. Some customers, however, made their own distribution to their customers. Under these circumstances the customer's shipping order to the appellee would be to ship in the customer's name to one of his distribution warehouses. The customer always paid the freight, advanced by the appellee. By the terms of some of these contracts delivery to the carrier was to be f. o. b. Hammond, Indiana, by others f. o. b. Chicago, Illinois. There was a custom of the trade which was part of each of these contracts which required the appellee to set apart for its customer and store in stockrooms on its premises at Hammond all finished books appropriately identified and packed for shipment, to be withdrawn by it from such space and delivered to the carrier as the customer sent shipping instructions. No charge was made by appellee for this service.

Appellee was paid by its customers for the making of books as the work progressed and the final payment was usually due at the completion of the binding operations. However, in some contracts it was provided that the final billing would be made as the books were shipped, with the proviso that any books on hand and unshipped twelve months after the date of the first delivery of the bound books to the stockroom were then billable regardless of the fact that they had not been shipped.

Under these arrangements appellee was bound to send the books it manufactured to any place it was directed by its customers but no contract for printing provided where shipments were to be made. That re-

mained the option of the customer. Appellee's charges were the same, irrespective of whether or not the shipments were interstate or intrastate or whether or not there was a shipment at all.

All of the books from which the involved income was derived were ordered by out of state customers and were consigned to out of state points. This income was about 95 per cent of appellee's gross business.

One of appellee's out of state customers published an encyclopedia which appellee printed and distributed for this customer in the manner above described. By a separate agreement with this customer appellee purchased bookcases and caused them to be sent with each set of this encyclopedia when instructed by its customer so to do. These bookcases were billed at an agreed price to this customer who would then pay appellee for them. The tax on the income derived by appellee from bookcases sent to consignees outside of Indiana is here in question. The total amount of this income is not in dispute.

According to the evidence most favorable to the appellee the appellee agreed with some of its out of state customers here involved to cause shipment to be made f. o. b. Hammond, Indiana, or Chicago, Illinois; with the remainder of its customers the agreement was to cause shipments to be made f. o. b. Hammond.

Upon the above facts the trial court gave judgment for the appellee upon the theory that all the transactions were in interstate commerce and therefore not taxable by the State of Indiana, being in violation of Article 1, § 8 of the Federal Constitution.

Appellee contends that the gross receipts from its manufacturing operations upon which the gross income tax was levied were derived from the manufacture and sale of books in interstate commerce and not from the mere rendition of local service.

It would seem to us that as to the printing and binding of books, as here, the appellee was rendering a local service and the gross receipts therefrom ■■ are not from interstate commerce. What appellee was being paid for was the services rendered and its materials used in an activity purely local in its nature. *Dept. of Treasury of Indiana* v. *Ingram-Richardson Mfg. Co.* (1941), 313 U. S. 252, 85 L. Ed. 1313, 61 S. Ct. 866; *Western Live Stock* v. *Bureau* (1938), 303 U. S. 250, 82 L. Ed. 823, 58 S. Ct. 546. Its contracts were not for the sale of books, nor for a sale of the materials furnished by appellee which went into the books, but for work, labor and materials which ultimately resulted in the transfer of a chattel made especially for the buyer and not suitable for sale to others in the ordinary course of appellee's business. By the weight of authority in this country such a contract would not amount to a sale. 46 Am. Jur., Sales, § 12, p. 206; *Yoe* v. *Newcomb* (1904), 33 Ind. App. 615, 71 N. E. 256. Also by the adoption of the Uniform Sales Act this state has recognized the rule that contracts such as we have here are not contracts for the sale of goods. Section 58-104, sub-section 2, Burns' 1943 Replacement. There are decisions such as *Sidney Stevens Implement Co.* v. *Hintze* (1937), 92 Utah 264, 67 P. 2d 632, and *M. K. Smith Corp.* v. *Ellis* (1926), 257 Mass. 269, 153 N. E. 548, wherein it has been indicated that after the completion and acceptance and delivery of the particular article involved the transaction would become a sale of the article. Whether any such transaction might ever become a sale we need not decide. We do not believe, however, where, as here, the contract is for the printing of a book that the transaction would ever become or result in a sale. After delivery the appellee's claim would still be for work, labor and material. Even in England where the rule

is liberal as to what are contracts of sale, it has been said, "If the contract be such that, when carried out, it would result in the sale of a chattel, the party cannot sue for work and labor; *but if the result of the contract is that the party has done work and labor which ends in nothing that can become the subject of a sale, the party cannot sue for goods sold and delivered. The case of an attorney employed to prepare a deed is an illustration of this latter proposition. It cannot be said that the paper and ink he uses in the preparation of the deed are goods sold and delivered. The case of a printer printing a book would most probably fall within the same catagory."* (Our italics) *Lee* v. *Griffin,* 1 Best & Smith 272, 121 Eng. Reprint 716, 23 Eng. Rul. Cas. 191. See also *J. A. Burgess Co.* v. *Ames* (1935), 359 Ill. 427, 194 N. E. 565; *H. G. Adair Printing Co.* v. *Ames* (1936), 364 Ill. 342, 4 N. E. 2d 481. Appellee was the printer and not the publisher of books. Its gross income did not depend upon the acceptance of the books. It came from a work order and not from a purchase order. Its income was earned when the books were completed.

The fact that the orders for the printing and binding of books were obtained from non-resident customers did not make the manufacturing process an interstate activity. *Western Live Stock* v. *Bureau, supra.* None of the service was in aid to the shipment and sale of merchandise in interstate commerce as was the case in *Gwin, etc., Inc.* v. *Henneford* (1939), 305 U. S. 434, 83 L. Ed. 272, 59 S. Ct. 325. The delivery of the books by appellee to the carrier in the manner as above pointed out was but an incident to and in aid of its local printing and binding business as was the case in *Dept. of Treasury* v. *Ingram-Richardson, supra.*

It has been said there is a distinction between sales made with a view to a certain result and those made with indifferent knowledge that the buyer contemplates that result. *Superior Oil Co.* v. *Mississippi* (1930), 280 U. S. 390, 74 L. Ed. 504, 50 S. Ct. 169. We think this principle applies not only to sales but to contracts for services such as we have before us. In the case at bar the customer was always the consignor and the one engaged in interstate commerce. The appellee did not manufacture the books to be sold in another state. It was not interested in where the books it printed would finally land—that was the concern of and dependent upon the wishes of appellee's customers.

By appellee's third and sixth paragraphs of final complaint it is sought to recover the tax paid by it on the income derived from the sale of bookcases which were sold, shipped and paid for as above indicated. The amounts sued for in these paragraphs are $391.86 and $541.50 respectively, with interest thereon from the date of their payments. It is our opinion that the sales of these bookcases were interstate transactions and the recovery on these paragraphs was proper. Each of these sales contemplated and involved at the time it was made the sale of goods to a customer in another state. The transportation of the property out of the state was within the contemplation of the contracting parties. See *Flanagan* v. *Federal Coal Co.* (1925), 267 U. S. 222, 69 L. Ed. 583, 45 S. Ct. 233. Appellants stress the point that title to these bookcases passed in Indiana. The place at which title passed is not determinative. It has been well said, "In determining whether commerce is interstate or intrastate, regard must be had to its essential character. Mere billing, or the place at which title passes,

is not determinative. If the actual movement is interstate, the power of Congress attaches to it ———." *Penna. R. R. Co.* v. *Clark Coal Co.* (1915), 238 U. S. 456, 59 L. Ed. 1406, 1410, 35 S. Ct. 896.

The sale of these bookcases can be distinguished from the sale considered in *Dept. of Treasury* v. *Wood Corp.* (1941), 313 U. S. 62, 85 L. Ed. 1188, 61 S. Ct. 885, as there the property was actually delivered by the seller to the purchaser who accepted it in Indiana. In that case the transporting of the property out of the state was not within the contemplation of or part of the local sales contract.

We conclude that the trial court was in error when it rendered judgment for the appellee in excess of the amounts claimed by said third and sixth paragraphs of appellee's final complaint.

The judgment is reversed. Inasmuch as there is no dispute in the material evidence there is no occasion for the new trial. The lower court is therefore directed to enter judgment for the appellants on all paragraphs of the final complaint, except the third and sixth paragraphs thereof. On these paragraphs the lower court is ordered to enter judgment for the appellee in each instance in the amount as therein prayed, and for costs.

Emmert and Young, J. J., not participating.

NOTE.—Reported in 90 N. E. 2d 805.